# THE PULLMAN PALACE CAR COMPANY

*v.*

# WILLIAM LAACK.

*Filed at Ottawa October 31, 1892.*

1. PRACTICE—*directing what the verdict shall be.* It is only when the evidence, with all fair inferences therefrom, is so insufficient to sustain a verdict for the plaintiff that the court must set it aside if rendered, that the court will be justified in directing a verdict for the defendant.

2. It is immaterial upon which side the evidence is introduced. If there is evidence which fairly tends to support the plaintiff's case, it must be submitted to the jury; and when their finding of fact has been approved by the trial court and its judgment affirmed by the Appellate Court, the only question raised in this court by an instruction seeking to take the case from the jury is, was there any evidence fairly tending to establish a right of recovery by the plaintiff.

3. NEGLIGENCE—*questions of fact.* Whether the omission of a master to supply the proper means to prevent an injury to a servant which might have been foreseen, is negligence on his part, is a question of fact, to be determined from the evidence; and so is the question whether the servant is guilty of contributory negligence.

4. MASTER AND SERVANT—*duty to notify servant of latent dangers, etc.* If, by reason of a master's omission to supply the usual and ordinary means to prevent accident, the hazard of his servants is increased, and a change in appliances made is not known to his servants, or so open and visible that they, by the exercise of ordinary care, can not see and know it, the legal duty will rest upon the master to notify them of the new or increased danger to which they are thereby exposed. This duty of the master can not be delegated to another, even though a fellow-servant, and absolve the master from liability resulting in consequence of the failure to communicate to the servants the increased hazard.

5. SAME—*who are fellow-servants.* Where one burning a brick kiln by means of crude oil burners allowed a party having a different burner to put in some of his burners for the purpose of testing which of the two sets of burners consumed the least oil to produce the same heat to burn a kiln, the latter will not be a fellow-servant with an employe of the owner of the kiln employed by him in the work.

6. SAME—*who are fellow-servants is a question of fact.* Who are fellow-servants is a question of fact, for the jury.

Syllabus.

7. Same — *duty of master to provide for servant's safety.* A master, although not held to guarantee the absolute perfection and suitableness of the machinery and appliances furnished the servants, is nevertheless bound to provide that which is safe and suitable for carrying on the business in which the servant is engaged, and the master is held to the employment of any precaution which a reasonably prudent man would employ under like circumstances.

8. The duty rests upon the master, whether a corporation or a natural person, not to expose the servant, in the discharge of his duty, to perils and dangers against which the master may guard by the exercise of reasonable care. Hence the rule is, that the master must, either personally or by his agent, if an individual, and by its agents, if a corporation, exercise reasonable and proper care, taking into consideration the business and the instrumentalities employed, to provide and keep in suitable repair and condition safe and suitable machinery. and appliances adequately sufficient for use by the servant in and about the business in which they are to be used by him ; and if a servant is injured in consequence of a neglect of such duty, or a negligent discharge of it, he being in the exercise of ordinary care for his own safety, the master is liable.

9. Same — *liability of master for acts of his agents to discharge his duty to servant.* In the discharge of the duty resting upon and owing by the master to the servant, the acts of the person authorized by the master to perform the duty are the acts of the master. His liability does not depend upon who performs the duty, but upon the existence of the duty itself, which the master must perform, and he can not, by delegating it to another, absolve himself from liability for its non-performance.

10. Same — *of the risk assumed by servant against the acts of fellow-servant.* As a general rule, a servant assumes the natural and ordinary risks of the business in which he engages, and is held to impliedly contract that the master shall not be liable for injuries consequent upon the negligence of a fellow-servant, in the employment of whom the master has exercised proper care ; but the servant does not assume or contract to waive the liability of the master for his own negligence, whether committed in person or by an agent authorized by the master to perform a duty resting upon him.

11. In such case, the master being under contract duly to perform, the servant may, without sufficient appearing or being shown to put him upon notice to the contrary, rely upon the due and reasonable performance of the duty. The law will not permit the master to evade the duty which it has cast upon him, by shifting it to another.

12. A corporation engaged in the burning of brick kilns by the use of crude oil, licensed another, who was in nowise connected with the

143  242
182   24
182   54
183  485

143  242
184  489
88a  620

143  242
89a  15 19

143  242
90a  1 370
91a  2 539

143  242
92a  19 223
92a  19 224
f188  1 493
f188  2 493

143  242
189  2 614
j189  1 616
93a  4 215

143  242
94a  2 130
95a  15 59
95a  15 362

143  242
d191  10 235
192  20 29
192  15 37
96a  16 182
96a  22 183
97a  8 631
97a  8 632
98a  15 5

143  242
193  3 210
99a  17 363

143  242
194  4 445
194  2 555
196  2 385
197  6 446
100a  15 534
101a  19 50
101a  2 473

143  242
197  19 631

143  242
200  10 108
201  15 319

143  242
202  22 147
104a  15 17
105a  20 649

143  242
115a  7 542

work that a servant was employed to do, to put in his burners in a part of a kiln, which required a new supply of pipe connecting another tank of oil with one-half of the feed pipe, and which was put in for the convenience of the master or of his licensee : *Held*, that the master was bound to see to it that it was suitable and safe, or give his servant notice, so that he might quit the employment if unwilling to assume the increased risk occasioned by the insufficient manner of its construction. The persons thus discharging the duty of the master were vice-principals, and their negligence was that of the master.

13. NEGLIGENCE — *contributory* — *going into place of danger to save property*. If a servant, in his attempt to save his employer's property from destruction, acts as a reasonable and prudent man would have acted under similar circumstances, he will not be held guilty of negligence in his efforts to save property because some unforeseen cause may intervene, which, concurring with his master's negligence, produced an injury to him which reasonable and prudent foresight could not anticipate.

14. The doctrine of contributory negligence is confined to the negligence of the party injured, and it is such negligence only, concurring with the negligence complained of, that will defeat the right of action.

15. SAME — *whether proximate cause of the injury* — *question of fact*. Whether the negligence of a defendant is the proximate cause of the injury complained of, is a question of fact. If the loss or injury is the natural cause of the alleged carelessness, which might have been foreseen by any reasonable person, the defendant is responsible, but not for injuries which could not be foreseen or expected as the result of the negligence.

16. SAME — *when proximate cause of the injury*. This is not to be understood as requiring that the particular result might have been foreseen, for if the consequences follow in unbroken sequence from the wrong to the injury, without an intervening efficient cause, it is sufficient, if, at the time of the negligence, the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from the negligence.

17. If the negligence of a defendant puts in motion the destructive agency, and the result is directly attributable thereto, and there is no intervention of a new force or power of itself sufficient to stand as the cause of the mischief, the negligence of the defendant must be considered as the proximate cause of the injury, if it could be foreseen, by the exercise of ordinary care, that injury might or could result from the negligence.

18. An intervening sufficient cause is a new and independent force, which breaks the causal connection between the original wrong and the injury, and it becomes the direct and immediate, — that is, the

proximate,—cause of the injury. The test is, was it a new and independent force, acting in and of itself in causing the injury, and superseding the original wrong, so as to make it remote in the chain of causation.

19. SAME—*when combined with other causes.* It is well settled that if the injury is the result of the negligence of the defendant and that of a third person, or of the defendant and an inevitable accident, or an inanimate thing has contributed, with the negligence of the defendant, to cause the injury, the plaintiff may recover, if the negligence of the defendant was an efficient cause of the injury.

20. Where the negligence of two independent persons results in injury to a third, and neither is sufficient in itself, both will be treated in combination as the proximate cause of the injury. A proximate cause is that which stands next in causation to the effect, not necessarily in time or space, but in causal relation.

21. Although a servant impliedly agrees that the master shall not be liable for the negligence of fellow-servants, he does not agree to take any risk or waive any liability of the master for his own negligence, and the servant may recover although the injury is the combined effect of the negligence of the master and fellow-servant. Where the negligence of two is, in combination, the proximate cause of an injury, either or both may be held responsible for the consequences resulting from their combined negligence.

22. Where the negligence of the master is combined with the negligence of a fellow-servant in producing an injury, and neither is the efficient cause alone, the master as well as the fellow-servant is liable.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

This was an action on the case, by appellee, against appellant, to recover for a personal injury alleged to have been received through the negligence of appellant. For several years before the accident appellant had been engaged in burning brick, and appellee worked as its servant in that business. In 1887 appellant commenced burning brick with crude oil for fuel, and appellee, before his injury, had assisted in burning several kilns of brick by the new method. In May, 1888, shortly after the kiln was fired, the injury occurred. The kiln then being burned was seventy or eighty feet long and

about thirty feet wide. There were eighteen or twenty arches running through from side to side. Around the kiln, a little way from it near the ground, two pipes were laid side by side, each about two inches in diameter. One of these pipes carried steam and the other oil for fuel. Opposite the end of each arch two short pipes, three-quarters of an inch in diameter, extended toward the arch, one connected with the oil pipe and the other with the steam pipe. The short steam pipe was about two feet and a half long, the small oil pipe perhaps a foot long. On the end of the steam pipe, at each arch, was placed what was known as the "burner." In the small oil pipes there was a check valve or stop-cock, near the main oil pipe, and the connection was made between this pipe and the burner by a rubber tube connecting the short pipe with the burner. The purpose for which the rubber was used was to permit expansion and contraction of the small steam pipe,— in other words, so as to make the pipe containing the oil flexible. The burner was by this means extended, not into, but as near, the arch as possible, and the oil injected into the arch by the action of the steam through the burner. On a side track, twenty feet or more away from the kiln, common railroad oil tanks were run on their trucks, and the oil carried therefrom by means of a two inch pipe, and emptied into the oil pipe surrounding the kiln. Prior to the time of the accident but one tank had been used at a time, and the supply pipe from the tank was fitted with a check valve near its entrance into the feed pipe or the pipe encircling the kiln. Each of the small pipes extending from the steam and feed pipes was supplied with a stop-cock near the feed pipe, so that both steam and oil could be shut off from any individual burner. There was also a check valve on the tank, by closing which the flow of oil from the tank could be shut off. This valve was so arranged that it could not be turned by hand, but necessarily required the use of a wrench or tongs.

In the afternoon before the accident, the kiln being in con-dition to fire, Williams, the kiln foreman, was ordered by appellant, through its superintendent, to cut the feed pipe in the middle of the kiln on each side, and stop the ends, which was done. Prior to this there had been in use what was known as the "Brown burner." They were directed to attach the Brown burner to one-half of the feed pipe, or the pipe encircling one-half the kiln, which appellee and the gang of men with him, under the direction of the steam-fitter of appellant, did. By the cutting of the oil pipe the circulation of oil around the kiln was impossible, and to supply the other end, another tank was run upon the side-track, and attached, by a new supply pipe, with the other half of the feed pipe, so as to fur-nish oil to run the other burners to be thereto attached. The purpose was to test the relative merits of the Brown burner and another, called the "Cannon burner," to see which would consume the greater amount of oil in producing the requisite continued heat. The attachment between the additional tank and the pipe surrounding the half of the kiln at which the Cannon burners were to be tested, including putting on the burners, was made by "Mr. Cannon and his men," possibly assisted by Mr. Williams, kiln foreman, and perhaps other fellow-workmen about the kiln. Cannon had been a gas-fitter, and was familiar with the work, but neither he nor the men under him were in the employ of appellant. In making con-nection between the tank and the feed pipe encircling the half of the kiln at which the Cannon burners were put, no stop-cock or valve was put in where the supply pipe from the tank joined the feed pipe, so that the oil running to the Cannon burners could be shut off only at two points,—at the tank, and at the small stop-cocks where the small burner pipes joined the feed pipe. At the other end the supply pipe for-merly in use was put in, which was supplied with the check valve near the feed pipe. This arrangement of the pipe to which the Cannon burners were attached was made by Can-

non, and, as before said, possibly with the knowledge of the foreman, but appellee, nor the gang of men with whom he worked, had notice that the stop-cock at the joining of the supply and feed pipes had been omitted. The rubber pipe leading to the burner, from the heat and action of the oil, was soon destroyed, and would break or crack off, permitting the oil to escape, and the oil being highly inflammable, would catch fire from the heat of the arch and prevent the closing of the small check valve in the pipe leading to the burner, and in such case the stop-cock at the junction of the supply and feed pipes had always been used, and by shutting off the oil there a conflagration was prevented. This condition of things was known to appellant, and it had supplied rubber tubing in considerable quantities to take the place of such as might be destroyed in that way. It is shown that the breaking of the rubber and escape of the oil was frequent, the rubber lasting sometimes during the burning of a kiln and sometimes not.

The kiln was fired in the evening. Appellee, and the gang of men under him, were in charge of the end of the kiln to which the old or Brown burners were fixed, and Williams and another shift of men in charge of the other end until about twelve o'clock, midnight, when Williams and his gang retired and appellee and two helpers took charge of the entire kiln. About four o'clock in the morning appellee was on a ladder at the side of the kiln, observing the top, when a rubber hose connecting with one of the Cannon burners burst, and the oil immediately took fire, and, extending, so covered the small stop-cock that it was impossible to close it. He ran immediately to the place where the supply pipe joined the feed pipe, expecting to find the stop-cock where it had always previously been found, but found none. He called to the other employes, and went himself about two hundred feet and turned in the fire alarm, and immediately returned to the end of the kiln where the fire was spreading. The fire was spreading rapidly,

was very hot, and fearing an explosion of the oil in the tank, appellee determined to disconnect the tank from the supply pipe and get it away from the fire. For this purpose he directed one of the men to shut off the tank,—that is, to close the valve between the tank and the supply pipe. One of the men went on to the tank for that purpose, and again got off. Appellee inquired if the valve had been closed, and one of the men replied that it had. He again inquired, and upon being assured that it had been closed, he went under the tank and disconnected the feed pipe from the tank, when the oil from the tank flowed over him and saturated his clothing, which instantly caught fire from the burning oil spreading from the feed pipe. Appellee was seriously injured. It appears that the man who went upon the tank to close the valve endeavored to do so with his hands. Finding that impossible, he ran to get a wrench, but upon his return the flames were sweeping over the tank and drove him away.

The negligence charged in the declaration, in the first count, was the neglect of appellant to furnish proper and safe connections between the tank and the brick kiln, and that the appellant negligently and improperly provided and used a connection made of rubber, which was unsuitable and improper for such purposes; that the rubber became heated and cracked and broke, permitting the oil to escape, which took fire, etc. The second count alleged the use of crude oil was dangerous and hazardous; that plaintiff was in appellant's employ as assistant to the foreman, and his employment necessarily brought him near to the tanks, kilns, etc., and it became and was the duty of appellant to exercise a high degree of care and diligence in providing proper and safe appliances around the brick kiln and oil tank, and proper connections, etc., and also to provide a safety check, or some suitable device, to stop the flow of oil in case of accident, etc., so as to insure the safety of its employes; yet appellant did not do so, but carelessly, negligently and improperly provided

a connection made of rubber, which, on becoming heated, vulcanized and broke, and the oil thereby escaped, and not having provided suitable and proper appliances by which the flow of oil could be checked, the flames from the kiln communicated with the oil, resulting, etc.

After the plaintiff rested his case the defendant moved the court to direct the verdict for it, which the court denied. At the close of the case defendant asked the court to instruct the jury that the evidence did not sustain the plaintiff's cause of action, and to return a verdict for the defendant, which was also refused. The jury found for appellee, and assessed his damage at $4000. The judgment thereon was affirmed by the Appellate Court, and the case is brought here by the further appeal of the defendant below.

Mr. J. S. Runnells, and Mr. William Burry, for the appellant:

When the evidence, and all proper inferences therefrom, are so insufficient to sustain a verdict for the plaintiff that such a verdict would be set aside, the court may direct a verdict for the defendant. *Goodrich* v. *Lincoln,* 93 Ill. 360; *Simmons* v. *Railroad Co.* 110 id. 346; *Phillips* v. *Dickerson,* 85 id. 11; *Railway Co.* v. *Lewis,* 109 id. 128.

As to who are fellow-servants, see *Railway Co.* v. *Moranda,* 93 Ill. 502; *Railroad Co* v. *Greary,* 110 id. 383; *Coal Mining Co* v. *McNally,* 15 Bradw. 181.

A servant takes the risks incident to the service. *Richardson* v. *Cooper,* 88 Ill. 273; *Pennsylvania Co.* v. *Lynch,* 90 id. 393; *Stafford* v. *Railroad Co.* 114 id. 245.

The alleged negligence was not the proximate cause of the injury. *Schmidt* v. *Mitchell,* 84 Ill. 195; *Barks* v. *Woodruff,* 12 Bradw. 97; Cooley on Torts, 68, 69; *Eckhert* v. *Railroad Co.* 43 Ill. 502; 2 Thompson on Negligence, 1174.

Appellee was guilty of such contributory negligence as to bar a recovery.

Mr. EDMUND FURTHMANN, for the appellee:

Appellee was not guilty of contributory negligence in attempting to save his employer's property. *Rexter* v. *Starin,* 73 N. Y. 601; *Wasmer* v. *Railroad Co.* 80 N. Y. 215; *Low* v. *Railroad Co.* 72 Me. 316; *Stratton* v. *Staples,* 59 id. 95; *Tobin* v. *Railroad Co.* id. 183.

As to the proximate cause of an injury, see *Railway Co.* v. *Kellogg,* 94 U. S. 469; 1 Sutherland on Damages, 47; *Brown* v. *Railway Co.* 54 Wis. 356; *Lowery* v. *Railway Co.* 99 N. Y. 159.

One who, acting with reasonable prudence, voluntarily exposes himself to danger for the purpose of protecting the person of another, may recover for the consequent injuries he receives from the person whose wrong caused the injury to himself and the danger to the person he sought to aid. *Linnehan* v. *Sampson,* 126 Mass. 506; *Cottrill* v. *Railway Co.* 47 Wis. 637; *Railway Co.* v. *Crosby,* 74 Ga. 737; *Eckart* v. *Railroad Co.* 43 N. Y. 503.

The same has been held to be true of one who, under similar conditions, is injured in an attempt to protect his own property. *Wasner* v. *Railroad Co.* 80 N. Y. 212; *Rexter* v. *Starin,* 73 id. 602.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

At the close of appellee's case in chief, appellant moved the court to instruct the jury to return a verdict for the defendant, and this being denied, again, at the close of the case, asked and the court refused an instruction directing the jury to find for the defendant. This ruling of the court is assigned as error, and forms the chief ground of complaint in this court.

If there is in the record evidence upon which a verdict for plaintiff may be sustained, the court committed no error in not taking the case from the jury. It is only where the evi-

dence, with all fair and legitimate inferences therefrom, is so insufficient to sustain a verdict for the plaintiff that the court must set it aside if rendered, that the court will be justified in directing a verdict for the defendant. *Simmons* v. *Chicago, etc. Railroad Co.* 110 Ill. 346; *Chicago, Rock Island and Pacific Railway Co.* v. *Lewis,* 109 id. 120; *Goodrich* v. *Lincoln,* 93 id. 360; *Phillips* v. *Dickerson,* 85 id. 11; *Lake Shore and Michigan Southern Railroad Co.* v. *Johnsen,* 135 id. 641; *Purdy* v. *Hall,* 134 id. 298. It is immaterial upon which side the evidence is introduced, if there is evidence which fairly tends to support the plaintiff's case it must be submitted to the jury. If, therefore, there was any evidence tending to sustain the issues in plaintiff's behalf, the error is not well assigned in this court. The weight and degree of credit to be given to evidence fall within the province of the jury, and when their finding of fact has been approved by the trial court and its judgment affirmed in the Appellate Court, the only question raised in this court by an instruction seeking to take the case from the jury is, was there any evidence fairly tending to establish a right of recovery by the plaintiff. If there was, the finding of the trial and Appellate Courts is conclusive as to its sufficiency to support the verdict.

It is, however, urged, that the omission to put in a stopcock in the supply pipe was not negligence, even if appellant can be held responsible therefor, and no other act of negligence being averred or proved, the plaintiff wholly failed to prove a case entitling him to recover. It is clear that the fact that the rubber used to carry the oil from the feed pipe to the burner was liable at any time to open and permit oil to escape, and that oil thus escaping was liable to ignite from the arch, was known, not only to the persons engaged in burning the kiln, but to the superintendent and officers of appellant. It had frequently happened, and it was known that the action of the oil and heat upon the rubber was such that it was very soon destroyed, and would crack open or break off. The com-

pany kept on hand a large supply of rubber to meet this condition. The manner of connecting the burner with the feed pipe was, the feed pipe opposite the arches was fitted with a short three-quarter inch pipe extending toward the arch, in which was fitted a stop-cock. Over the end of this short pipe the rubber tubing was forced, and the other end in like manner attached to the burner. The rubber tubing was about eighteen inches in length, and when completed it was about thirty inches from the feed pipe to the end of the burner next to the kiln. The effect of the breaking of the rubber might be the discharge of a stream of oil to its full capacity, practically under the stop-cock, as the evidence tended to show was done by the breaking in this case. The effect testified to would be likely to occur, the oil being highly inflammable, and, igniting, would prevent the use of the small stop-cock to check the flow of oil. The evidence tends to show that, without negligence on the part of appellee or his fellow-servants, it became, for the reason stated, immediately impossible to stop the flow of oil at that place; that he immediately went to the supply pipe, where a stop-cock had always before been inserted, and found none, and that this was the first notice he, or, so far as shown, his fellow-workmen then assisting him at the kiln, had that no valve had been put in to the supply pipe.

But, it is said, two ways of stopping the flow of oil having been provided, it was not negligence not to supply the third. The question as to whether it was or was not negligence was a question of fact, which has been found adversely to appellant's contention. The jury were justified by the evidence in finding that the check valve in the three-quarter inch pipe, as could readily have been foreseen might be the case, was rendered immediately useless by the spread of the burning oil. There was evidence tending to show that the valve on the tank was not relied upon in an emergency, as, when it became necessary to quickly stop the flow of oil. It was used when the supply pipe was to be attached or disconnected or

the car moved. It is conceded that, from its construction, it could not be turned by hand. Counsel for appellant say, in speaking of it: "It was evidently so arranged that it required some kind of wrench to turn it." No notice was given appellee, or any of his fellow-workmen in the same gang or shift, of the omission of the stop-cock from the supply pipe, so as to enable him or them to have appliances ready to shut off the oil from the tank if it became necessary. When Wagner, and others of the fellow-workmen, were called to assist in moving the tank, he jumped upon it and endeavored to turn the valve with his hand, and found it impossible. He went immediately for a wrench, but upon his return was driven away by the flames. Notice to Williams, foreman at the kiln, or to others who might be regarded as fellow-servants of appellee, was not notice to appellee. If, by reason of the omission to supply the usual and ordinary means to prevent accident, the hazard to its servants was increased, and the change in appliances was not known to the servants, or so open and visible that they, by the exercise of ordinary care, would see and know of it, the legal duty rested upon the master to notify them of the increased danger to which they were thereby exposed; and it being a duty owed by the master to the servant, it could not delegate that duty to another, even though a fellow-servant of appellee, and absolve itself from liability for the injury resulting in consequence of the failure to communicate knowledge to appellee of the increased hazard. *Chicago, etc. Railroad Co.* v. *Roth*, 112 U. S. 377; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; Thompson on Negligence, 972; Wharton on Negligence, sec. 211; 4 Am. and Eng. Ency. of Law, 59, note 3.

It is also insisted that a change in the appliances, by means of which it is alleged the injury was caused, although not known to appellee, having been made by his fellow-servants, the negligence, if any, was that of his fellow-servants, and he can not therefore recover. This question, like the preceding,

was one of fact.    Whether the persons who put in the appliances to which the Cannon burners were attached were fellowservants of appellee in performing that work, under the rules defining who are fellow-servants, was a question of fact. (*Indianapolis and St. Louis Railroad Co.* v. *Morgenstern,* 106 Ill. 216; *Chicago and Northwestern Railroad Co.* v. *Moranda,* 108 id. 576.)    There is ample evidence from which the jury might have found that they were put in by Mr. Cannon, and men in his employ, (none of whom were in the employ of the appellant,) under a license from appellant, for the sole purpose of testing the relative merits of the two burners in the consumption of oil in producing the requisite heat to burn a kiln of brick. If so, they were not fellow-servants of a common master with appellee, or engaged in the same line of employment, or so associated with him as to fall within the definition of fellowservants, as held by this court in the foregoing and numerous other cases.    Where the negligent act is a direct result of the exercise of power conferred by the master, in the performance of a duty devolving by law upon him, the master is liable. (*Chicago and Alton Railroad Co.* v. *May,* 108 Ill. 288; *North Chicago Rolling Mill Co.* v. *Johnsen,* 114 id. 57.)    If, therefore, it be said that they were fellow-servants of appellee, or that fellow-servants of appellee in the work of burning brick and operating the appliances furnished by the master at the kiln assisted in putting in such appliances, they would not be fellow-servants of appellee in respect of the particular work done by them.

That the master, although not held to guarantee the absolute perfection and suitableness of the machinery and appliances furnished the servants, is, nevertheless, bound to provide that which is safe and suitable for carrying on the business in which the servant is engaged, and is held to the employment of every precaution which a reasonably prudent man would exercise under like circumstances, is well established. Arising by implication from the contract of employment, as

well as from reasons of public policy and natural justice, the duty rests upon the master,—whether a corporation or a natural person,—not to expose the servant, in the discharge of his duty, to perils and dangers against which the master may guard by the exercise of reasonable care. *(Pennsylvania Co.* v. *Lynch,* 90 Ill. 333; *Fairbank* v. *Haentzsche,* 73 id. 236; *Missouri Furnace Co.* v. *Abend,* 107 id. 44.) Hence the rule is, that the master must, either personally or by his agent, if an individual, and by its agents, if a corporation, exercise reasonable and proper care, taking into consideration the nature of the business and the instrumentalities employed, to provide and keep in suitable repair and condition safe and suitable machinery and appliances, adequately sufficient for use by the servant in and about the business in which they are to be used by him; and if a servant is injured in consequence of a neglect of such duty or a negligent discharge of it, he being in the exercise of ordinary care for his own safety, the master is liable. (Cases *supra; Chicago and Alton Railroad Co.* v. *Platt,* 89 Ill. 141; *Railroad Co.* v. *Troesch,* 68 id. 545; *Calumet Iron and Steel Co.* v. *Martin,* 115 id. 358; Wood on Master and Servant, sec 326, *et seq.;* Beach on Contributory Neg. 123; *Hough* v. *Railroad Co.* 100 U. S. 213.) It necessarily follows, that in the discharge of the duty resting upon and owing by the master to the servant, the acts of the person authorized by the master to perform the duty are the acts of the master. The liability of the master does not depend upon who performs the duty, but upon the existence of the duty itself, which the master must perform, and he can not, by delegating it to another, absolve himself from liability for its non-performance.

As a general rule, the servant assumes the natural and ordinary risks of the business in which he engages, and is held to impliedly contract that the master shall not be liable for injuries consequent upon the negligence of a fellow-servant, in the employment of whom the master has exercised proper

care, but he does not assume or contract to waive liability of the master for his own negligence, whether committed in person, or by an agent authorized by the master to perform a duty resting upon him. In such case, the master being under contract duly to perform, the servant may, without sufficient appearing or being shown to put him upon notice to the contrary, rely upon the due and reasonable performance of the duty. The law will not permit the master to evade the duty which it has cast upon him, by shifting it upon another. In this case, the master licensed Cannon, who was in nowise connected with the work which appellee was employed to do, to put in his burners. This required a new supply pipe connecting another tank of oil with one-half of the feed pipe. It was put in for the convenience of the master or his licensee, and the master was bound to see to it that it was suitable and safe, or give notice to appellee, so that he might quit the employment if unwilling to assume the increased risk occasioned by the insufficient manner of its construction. The persons thus discharging the duty of the master were vice-principals, and their negligence was the negligence of the master.

But it is said, also, that upon the facts shown, appellee was guilty of such contributory negligence as to bar recovery. It is urged, first, that it was gross negligence for him to go under the tank and uncouple the supply pipe, whereby the oil poured over him; and second, that having been in a place of safety when he went to turn on the fire alarm, it was negligence for him to return to the place of known danger.

In respect to the first, it will only be necessary to say, that whether the doctrine of comparative negligence, as defined in *Galena, etc. Railroad Co.* v. *Jacobs,* 20 Ill. 478, and subsequent cases, has still a place in the jurisprudence of this State, and whether the later case of *Calumet Iron and Steel Co.* v. *Martin,* 115 Ill. 358, and other cases since decided, have not placed that doctrine upon a basis where it has become simply another form of stating the common law rule of contributory negli-

gence, need not be here discussed, for the reason that it can have no application to cases like this, where the defendant is found to be in the exercise of ordinary care. The question was fairly submitted whether the plaintiff was, in uncoupling the supply pipe, in the exercise of ordinary care for his own safety, and the jury have found that he was, upon ample evidence to sustain the finding. This is conclusive of the question of the right of recovery, if his injury was the result of the defendant's negligence. *Calumet Iron and Steel Co.* v. *Martin, supra; Chicago and Eastern Illinois Railroad Co.* v. *Connor,* 30 Ill. App. 307; *Abend* v. *Terre Haute and Indianapolis Railroad Co.* 111 Ill. 203; Wharton on Negligence, sec. 334, *et seq.;* Shearman & Redfield on Negligence, secs. 25, 36, 37.

In respect of the second point, we are referred to numerous cases holding that, because of the sacredness with which human life is regarded by the law, negligence will not be attributable to him who impulsively rushes into known danger to save it. But that rule does not apply to one who goes voluntarily into such danger to save property, whether his own or another's. The authorities are not uniform upon the last proposition, but its determination here is wholly unimportant. When appellee returned from sending the fire alarm there was nothing, save the possible explosion of the oil tank, that menaced him with personal danger. He undertook to move the tank out of the way of the fire, and undoubtedly would have succeeded, without injury to himself, had the valve upon the tank been closed when he uncoupled the supply pipe from it. It was his duty to make all exertion possible, consistent with his personal safety, to rescue the master's property and prevent the farther spread of the conflagration. He was required to judge of the danger from the condition of affairs as they then existed, and act with promptness and as prudence dictated, and if, at the time he returned and endeavored to perform his duty, reasonable and prudent men, under all existing circumstances, would have apprehended no personal danger,

he is not to be held guilty of negligence in returning because some unforseen cause intervened, which, concurring with the master's negligence, produced the injury, which reasonable and prudent foresight could not have anticipated. Whether there was in fact danger from explosion from the tank is unimportant. It did not explode, and the injury did not result from that or from any danger to appellee's person, real or apparent, that the utmost prudence could have reasonably apprehended when he returned to the place of injury.

But it is urged that, the injury resulting as a consequence of the negligence of a fellow-servant in not closing the valve upon the tank, no recovery against appellant can be justified. It is said, first, that the negligence of the fellow-servant intervening as an efficient cause of the injury, the negligence of the master, if any is attributable, became the remote, and not the proximate, cause; and second, that the master not being liable for injury inflicted in consequence of the negligence of a fellow-servant, if the injury would not have resulted but for such intervening negligence of the servant the master is not liable.

The fallacy of the first position lies in its assumption of the fact that the negligence of the fellow-servant was, in and of itself, a new and efficient cause of the injury. Whether the negligence of the defendant was the proximate cause of the injury was a question of fact, also, to be determined by the jury, under proper instruction from the court. We held in *Fent* v. *Toledo, Peoria and Warsaw Railroad Co.* 59 Ill. 349, (approving *Toledo, Peoria and Warsaw Railroad Co.* v. *Pindar,* 53 id. 451,) that whether the alleged negligence was the proximate cause of the injury was in each case a question of fact, and expressly repudiating the contrary rule, as laid down in *Ryan* v. *New York Central Railroad Co.* 35 N. Y. 314, as in the teeth of almost numberless decisions and as unsupported by reason. In the subsequent case of *Toledo, Wabash and Western Railway Co.* v. *Muthersbaugh,* 71 Ill. 572, the same

was again held. We said in the *Fent case,* that so far as the case turned upon the issue of remote or proximate cause, the jury should be instructed that if the loss is a natural consequence of the alleged carelessness, which might have been foreseen by any reasonable person, the defendant is responsible, but is not to be held responsible for injuries which could not have been foreseen or expected as the result of the negligence. This is not to be understood as requiring that the particular result might have been foreseen, for if the consequences follow in unbroken sequence from the wrong to the injury, without an intervening efficient cause, it is sufficient if, at the time of the negligence, the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence. *Baltimore, etc. Railroad Co.* v. *Kean,* 61 Md. 154; *Milwaukee, etc. Railroad Co.* v. *Kellogg,* 94 U. S. 469; *Terre Haute, etc. Railroad Co.* v. *Buck,* 96 Ind. 346, and the cases collected; 4 Am. and Eng. Ency. of Law, 42; *Consolidated Ice Machine Co. et al.* v. *Keifer,* 134 Ill. 481; *La. Mut. Ins. Co.* v. *Tweed, supra; Miller* v. *St. Louis, etc. Railroad Co.* 90 Mo. 389; *Kellogg* v. *Chicago Railroad Co.* 26 Wis. 223; *Smith* v. *London, etc. Railroad Co.* L. R. 6 C. P. 21; Bevan on Negligence, 80, 81. Thus, in the *Keifer case, supra,* it could not be foreseen that the particular injury might follow the placing of the tank upon an insufficient support. It might have fallen and injured no one, or a person other than appellee's intestate. It was held sufficient that the support was so insufficient that injury might result from the falling of the tank.

If, therefore, the wrong of appellant put in motion the destructive agency, and the result is directly attributable thereto, and there was no intervention of a new force or power of itself sufficient to stand as the cause of the mischief, the negligence of appellant must be considered the proximate cause of the injury, if it could have been forseen, by the exercise of ordinary care, that injury might or would result from the negligence.

"An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury, and itself becomes the direct and immediate, that is, the proximate, cause of an injury." (Bishop on Non-Contract Law, secs. 42, 835, 836.) And the test is, "was it a new and independent force, acting in and of itself in causing the injury, and superseding the original wrong complained of, so as to make it remote in the chain of causation." It must be manifest from this definition that the negligence of the fellow-servants, whether it be treated as creating a condition, merely, or as a cause, was not such an intervening efficient cause as to break the causal connection between the negligence of appellant and the injury. The destructive agency set in motion by the negligence of appellant increased in extent by the flow of burning oil, igniting whatever was in its way that was combustible. This followed as a natural and inevitable sequence, and coming in contact with the oil upon appellant's clothing, ignition followed as a natural result. It therefore required the combined negligence of appellant and the fellow-servant to produce the conditions resulting in appellee's injury.

It is well settled that where the injury is the result of the negligence of the defendant and that of a third person; or of the defendant, and an inevitable accident; or an inanimate thing has contributed with the negligence of the defendant to cause the injury, the plaintiff may recover, if the negligence of the defendant was an efficient cause of the injury. (2 Thompson on Negligence, 1085, sec. 3; Bishop on Non-contract Law, secs. 39, 450, 452; Shearman & Redfield on Negligence, sec. 31, *et seq.; Carterville* v. *Cook*, 129 Ill. 152; *Ice Machine Co.* v. *Keifer, supra,* and cases cited.) In such case, the negligence of two independent persons resulting in injury to the third, where neither is sufficient within itself, both are to be treated in combination as the proximate cause of the injury. It is clear that the negligence of the fellow-servant, in and of

itself, could not have produced the injurious results suffered by appellee. The negligence of appellant and the fellow-servant were therefore concurrent causes, and combined were the proximate cause of the injury. An efficient cause is simply the "working cause," or that cause which produces effects or results, (Webster,) and a proximate cause is that which stands next in causation to the effect,—not necessarily in time or space, but in causal relation.

The modification of instructions complained of was in harmony with the view here expressed, and was not erroneous. The court modified the twenty-first and other instructions asked by the defendant, and thereby said to the jury, in effect, that if they believed, from the evidence, that the injury resulted wholly from the negligence of the fellow-servant as the immediate cause of the injury, the defendant was not liable. This modification raises the second proposition, and in effect presents the question whether, where the negligence of the servant necessarily entered into or intervened to produce the injurious result, the master is liable. It would seem to follow, as a result of the doctrine, that although the servant impliedly agrees that the master shall not be liable for the negligence of fellow-servants, he does not agree to take any risk or waive liability of the master for his own negligence,—that the servant may recover although the injury is the combined effect of the negligence of the master and fellow-servant. It is a familiar principle, that where the negligence of two are, in combination, the proximate cause of an injury, either or both may be held responsible for the consequences resulting from their combined negligence. *Carterville* v. *Cook, supra; Ice Machine Co.* v. *Keifer, supra; Wabash, St. Louis and Pacific Railway Co.* v. *Shacklet,* 105 Ill. 364; *Union, etc. Railroad Co.* v. *Shacklet,* 119 id. 232; 2 Thompson on Negligence, 1085, sec. 3, and cases cited; Cooley on Torts, (1st ed.) 684; Hill on Remedies for Torts, 178; Wharton on Neligence, sec. 788; Shearman & Redfield on Negligence, sec. 122.

Mr. Bishop, after stating that the rule of law is, "That a person contributing to a tort, whether his fellow contributors are men, natural or other forces or thing, is responsible for the whole, the same as though he had done all without help," subject to the limitation that the person injured shall receive his damages but once, (Non-contract Law, secs. 518, 519) proceeds (sec. 684,) that, within the doctrine thus explained, "a master whose negligence contributed to the injury of a servant is, if the servant's negligence did not contribute also, liable for the entire injury, though some other force for which the former is not responsible—for example, the negligence of a fellow-servant—likewise contributed," and cites in support, *Crutchfield* v. *Railroad Co.* 76 N. C. 320, *Boyce* v. *Fitzpatrick*, 80 Ind. 526, *Paulmier* v. *Erie Railroad Co.* 5 Vroom, 151, *Stringham* v. *Stuart*, 100 N. Y. 516, and *Railroad Co.* v. *McKinzie*, 81 Va. 71. See, also, Thompson on Negligence, 981, sec. 10; *Booth* v. *Boston, etc. Railroad Co.* 73 N. Y. 38; *Cayzer* v. *Taylor*, 10 Gray, 274. These authorities fully sustain the position that where the negligence of the master is combined with the negligence of a fellow-servant in producing the injurious result, and neither is the efficient cause alone, the master as well as the fellow-servant is liable. No case to which we have been referred, or of which we are aware, has gone so far as to hold that where the negligence of the master contributes to the injury the servant may not recover. The doctrine of contributory negligence is confined to the negligence of the party injured, and it is such negligence only, concurring with the negligence complained of, that will defeat the right of action.

The modification of the defendant's instructions had the effect of making them conform to the rules and principles herein held, and was not, therefore, in our judgment, erroneous. Nor was it error for the court to refuse the instruction in effect taking the case from the jury.

While the case is extremely close upon its facts, the jury were correctly instructed, and we find no error for which the judgment should be reversed. It is accordingly affirmed.

*Judgment affirmed.*