# THE METROPOLITAN WEST SIDE ELEVATED RAILWAY CO.

*v.*

## ALFRED J. FORTIN.

*Opinion filed June 16, 1903.*

1. TRIAL—*when case must go to jury.* If the evidence in favor of the plaintiff, together with all the legitimate conclusions to be drawn therefrom, fairly tends to sustain his cause of action, he is entitled to have the case submitted to the jury whether such evidence is weak or strong.

2. FELLOW-SERVANTS—*qualification of rule that risk of an injury by fellow-servant is assumed.* Assumption by a servant of the risk of injury from fellow-servants is subject to the implied undertaking of the master that he will use due care to employ competent and prudent servants.

3. SAME—*when question of assumption of risk of injury from another servant is for the jury.* Whether plaintiff, who was a "coupler" on an elevated railroad, assumed the risk of injury from the acts of a motorman on the same road is a question for the jury, under evidence tending to show that the motorman was habitually reckless, which fact was known to defendant but not to plaintiff.

4. SAME—*existence of relation of fellow-servants is ordinarily a question of fact.* Whether servants of the same master are fellow-servants is ordinarily to be determined by the jury from a consideration of all the evidence and under proper instructions.

5. EVIDENCE—*proof of reckless conduct not confined to acts similar to cause of injury.* In an action for injuries received through reckless backing of a motor car against the car which the plaintiff was uncoupling, proof of the general reputation of the motorman for recklessness is not confined to the method in which he usually performed acts similar to the one causing the injury.

*Metropolitan El. R. R. Co.* v. *Fortin,* 107 Ill. App. 157, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

O. W. DYNES, for appellant.

GEMMILL & FOELL, for appellee.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This is an action on the case brought by the appellee, against the appellant, to recover damages for a personal injury sustained by him while in its employ. The jury returned a verdict in favor of the appellee for the sum of $18,000, and a *remittitur* of $3000 having been entered, the court overruled a motion for a new trial and rendered judgment on the verdict for $15,000, which judgment has been affirmed by the Branch Appellate Court for the First District, and a further appeal has been prosecuted to this court.

It is first contended that the court erred in declining to take the case from the jury at the close of all the evidence, on the ground that the appellee had failed to make a case. The appellee had been in the employ of the appellant for about two years, and for the three months prior to the date of the accident had been employed as a coupler, and at the time of the accident was working in that capacity at its Logan Square terminus. It appears from the undisputed evidence that trains came into said terminus about every six minutes; that on the evening upon which appellee was injured he had uncoupled a motor car from an in-coming train, and was then informed by the train dispatcher, who had supervision of the receiving, making up and sending out of trains, that there was a car in said train in bad order and for him to uncouple the same that it might be set out and repaired; that the appellee immediately started to obey the order of the dispatcher, and while between the cars, engaged in uncoupling said car, a motor car was suddenly and violently thrown against the train of which the car that the appellee was uncoupling formed a part, and he was knocked down and run over, and while the evidence was conflicting upon the point, it fairly tended to show that the motor was thrown against the train by reason of an order given the motorman by said dispatcher to back

down his motor car and connect with the train from which appellee was then uncoupling said car, which order the motorman executed in a reckless and wanton manner. This court cannot weigh the evidence in passing upon the question whether or not the trial court erred in over-ruling the motion to take the case from the jury at the close of all the evidence. Such motion presents to this court a question of law and not one of fact, and is in the nature of a demurrer to the evidence; that is, admitting the evidence in favor of the plaintiff to be true, does it, together with all legitimate conclusions which may be drawn therefrom, fairly tend to sustain the plaintiff's cause of action? If it does, then, as a matter of law, the plaintiff is entitled to have his case passed upon by the jury. In *Birdsell Manf. Co.* v. *Oglevee,* 187 Ill. 149, the court, after holding the record contained evidence which fairly tended to support the plaintiff's cause of action, said (p. 151): "Whether this evidence is weak or strong is not a question for this court, as the judgment of the Ap-pellate Court in respect to the facts, where there is any evidence tending to support the judgment, is final, and cannot be reviewed by this court.—*Chicago and Alton Rail-road Co.* v. *Kelly,* 127 Ill. 637; *Hamburg-American Packet Co.* v. *Gattman,* 127 id. 598; *Cothran* v. *Ellis,* 125 id. 496; *McCor-mick Machine Co.* v. *Burandt,* 136 id. 170; *Hawk* v. *Chicago, Burlington and Northern Railroad Co.* 138 id. 37; *National Syrup Co.* v. *Carlson,* 155 id. 210." The court did not err in refusing to take the case from the jury.

It is next contended that the court erred in declining to instruct the jury that the motorman in charge of the motor car which was backed against the train, and ap-pellee, were fellow-servants, and that appellee assumed the risk of being injured by the negligence of the mo-torman. The general rule is, that the question whether servants of the same master are fellow-servants is a question of fact, to be determined by the jury from a con-sideration of all the facts and circumstances proven in

the particular case, under proper instructions from the court, (*Norton Bros.* v. *Nadebok*, 190 Ill. 595,) and there was evidence before the jury fairly tending to prove that the motorman was incompetent and habitually reckless in handling said motor car, which fact was known to the appellant and not to the appellee. The assumption by the servant of risks resulting from the negligence of his fellow-servants is subject to the implied undertaking of the master that he will use all reasonable care to employ competent and prudent employees. When the master fails to employ competent and prudent co-employees, the risk resulting from such failure is an extra hazard, and not among the risks which the servant assumes as a part of his contract of service unless he has notice of such incompetency and recklessness, and after such notice assumes such extra hazard by failing to quit the service in which he is employed, and upon entering the employment he has the right to assume that the master has discharged to him his legal duty in selecting competent and prudent co-employees, and may continue to act upon that assumption in the absence of anything putting him upon notice to the contrary, and the question whether he has such notice as would require him to quit the service or assume the extra hazard is a question of fact, to be determined by the jury from all the evidence in the case. In *Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614, on page 622 the court said: "Among the risks incident to the business, which the servant is understood to take upon himself by the contract of hiring, are those arising from the careless or wrongful acts of fellow-servants. (Wood's Law of Master and Servant, sec. 427.) But the assumption by the servant of risks resulting from the negligence of his fellow-servants is subject to the implied undertaking of the master that he will use all reasonable care to furnish safe premises, machinery and appliances and to employ competent and prudent co-employees. (*Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Adams,*

105 Ind. 151; Wood's Law of Master and Servant, secs. 329, 416.) When the master fails to furnish suitable machinery and to see that it is properly protected, or to employ careful and prudent servants to manage and operate such machinery, the risks resulting from such failure are extra-hazardous, and such extra hazards are not among the risks which the employee assumes as a part of his contract of service." And in *Western Stone Co.* v. *Whalen,* 151 Ill. 472, on page 486: "It is, however, insisted, that the plaintiff is shown to have had the same opportunity to have known of the reckless habit of Cooley that defendant is charged with having, and that the failure to inform himself in respect thereof was negligence so contributing to the injury that no recovery can be had. As already said, the plaintiff, upon entering the employment, had a right to assume that the defendant had discharged its legal duty in selecting his co-employees, and might act upon that assumption in the absence of anything putting him upon notice to the contrary. (*Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242.) Whether there was evidence of facts sufficient to put him upon notice, and requiring him to quit the service or assume the extra hazard, was a question of fact." The questions whether or not the motorman and appellee were fellow-servants and whether the extra hazard of being injured by the incompetency or recklessness of the motorman was assumed by the appellee were questions of fact and properly left to the jury. The instructions above referred to, if given, would have invaded the province of the jury, and were properly refused.

It is further contended that the court erred in permitting the appellee to introduce proof that the general reputation of the motorman as to prudence and carefulness in running and managing said motor car was bad; that he had run past signals, had jerked the train he was pulling, and had been laid off and reprimanded by the appellant for the careless and reckless manner in which

he had performed his duties as motorman while in its employ, and it is urged that the proof of his reckless and careless conduct should have been confined to the method in which he performed acts similar to those complained of at the time of said injury. This objection is without force. In *Western Stone Co.* v. *Whalen, supra,* on page 482 it was said: "The plaintiff, for the purpose of carrying knowledge home to the defendant of the incompetency and reckless character of the person they had employed as captain of their towing vessel, offered proof tending to show the general reputation of said captain as to prudence and carefulness in running and managing the steamboat, and that such general reputation was bad. * * * Where an injury has occurred through the incompetency, recklessness or unskillfulness of a servant who was generally known and reputed to be unfit, reckless or unskillful, evidence of the fact that he was generally so reputed is competent, as tending to show that the master, by the exercise of that ordinary and reasonable care required in his employment, could and ought to have known of his unfitness, want of skill or reckless habit." And in *Consolidated Coal Co.* v. *Seniger,* 179 Ill. 370, where the admissibility of evidence similar to that objected to here was under consideration, the court said (p. 373): "Various witnesses were asked by plaintiff's counsel as to what the manner of the engineer was in handling the cage or letting men down or bringing them up from the mine, and answers were given against objection of defendant. * * * If we understand counsel, the claim is, first, that the incompetency of the engineer could only be shown by a general bad reputation for incompetency; and secondly, that the fact of incompetency could not be proved by his conduct, because it contradicted his certificate of competency given him by the State Board of Mine Examiners. We do not think the evidence incompetent on either ground. It is true that a competent engineer may be negligent on a particular

occasion and not be above the ordinary frailties of human nature, and that incompetency is not shown by some particular act of negligence; and yet, one who knows how to run and handle an engine properly, and who has the physical strength to do so, cannot be said to be competent for the position of engineer if he is habitually imprudent, careless and reckless. One is incompetent who is wanting in the requisite qualifications for the business entrusted to him. Rasor was incompetent for the business of engineer if he was wanting in the qualifications required for the performance of the service, whether arising out of a lack of knowledge or capacity or through imprudence, indolence or habitual carelessness, and evidence which tended to bring before the jury his particular qualities in that respect and to show his fitness or unfitness for the position of engineer was competent." The jury were justified, from the evidence in this case, in finding that while the appellee was between the cars uncoupling the disabled car, pursuant to the order of the train dispatcher, said dispatcher, without warning to the appellee, ordered the motorman to back down and attach his motor car to the train of which the car being uncoupled formed a part, without notifying the motorman of the then situation of appellee, and that said motorman, in obedience to said order, but in a careless and reckless manner and with great force and violence, threw said motor car against the train, the result of which was that appellee was knocked down and run over and his left arm and leg so crushed and mangled that amputation thereof was necessary.

We find no reversible error in this record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*