## E. Schneider & Co. v. Nellie Carlin, Administratrix.

### Gen. No. 11,705.

1. FELLOW-SERVANTS—*who not.* A skilled workman employed in a separate room from a common laborer is not the fellow-servant of such common laborer where they were not at the time of the accident in a position to exercise an influence over each other promotive of caution for their common safety.

2. SERVANT—*right to presume that master will perform his duty.* A servant is entitled to presume that the master will perform his duty and instruct inexperienced servants in the performance of their duties so that their uninstructed ignorant acts may not bring upon him an unexpected peril.

3. MEASURE OF DAMAGES—*when inaccurate instruction upon, will not reverse.* In an action on the case for death caused by the wrongful act of the defendant, an instruction which permits the jury to assess the plaintiff's damages at such sum as " in their opinion " the jury may find the widow, minor children and next of kin are entitled to, while inaccurate, will not reverse where such instruction contains a qualification that such opinion must be formed " under the evidence " in the cause.

Action on the case for death caused by alleged wrongful act.   Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding.   Heard in the Branch Appellate Court at the March term, 1904.   Affirmed.   Opinion filed May 16, 1905.

**Statement by the Court.**   This is an action to recover for personal injuries resulting in the death of one Charles Williamson.

The defendant is engaged in the manufacture of candles. In the prosecution of its business it made use of a large number of second-hand barrels, which it purchased of a man who obtained them wherever he could, picking them up, as witnesses state, all over the city.   The barrels thus gathered had been used for various purposes.   Some of them had contained either machine, lubricating or cotton-seed oil, varnishes, kerosene, turpentine, naphtha or wood alcohol.   There is testimony tending to show that the principal use made of them by appellant was to fill them with filtered oil, for sale as a part of the product of the fac-

tory. The barrels were examined when received, and those which were defective were rejected by appellant and taken back by the party by whom they were delivered. There is evidence that the latter was supposed to deliver to appellant mostly barrels which had contained oil, but it appears that other kinds of barrels also were accepted, including occasionally barrels which had contained wood alcohol, which appellant sometimes used to fill with glycerine for shipment. The barrels were delivered in quantities of from fifty to seventy-five at a time. Sometimes they were received by the deceased, who was employed by appellant as a cooper. When he did so receive them he was in the habit, it is said, of rejecting those which were defective in any way, and there is evidence that he also rejected barrels which he found had contained wood alcohol and which were explosive if brought into connection with fire. When barrels were thus received, they were taken by appellant's employees as soon as they were unloaded and the exteriors washed as fast as could be done. Some of them, which had contained tallow, were required to be steamed and were then taken to the wash room and washed like the others. After washing the barrels were piled up and left to dry for subsequent overhauling and repair, if need be, by the deceased, who was the cooper. In order to ascertain whether the barrels were also clean on the inside, a lighted candle was made use of, which was placed on the end of a wire and inserted in the bunghole. This candle was kept in the wash room lighted and ready for use. The deceased, Williamson, worked as a cooper in a room directly adjoining the wash room, with which it was connected by a "big sliding door." The morning of the accident appellant's foreman had set a new employee at work washing the barrels, and directed an older employee to show the new man how to do the work. The latter was shown how to use the candle, but nothing was said about the danger of inserting it in barrels which had contained wood alcohol or other explosives. The work went on as usual, and a number of the barrels had been washed and piled away to dry for the

cooper, when a barrel which turned out to have contained an explosive was brought in from the yard, thrown in the tank and washed in the usual manner. It was then taken out and the new employee inserted the lighted candle, as he had been shown how to do and had been doing with preceding barrels. An explosion followed, and the cooper, Williamson, who was working in his room and about fifteen feet away, was struck on the forehead and killed. The barrel had apparently contained either gasoline or wood alcohol.

It appears that Williamson had been working for appellant as a cooper for a number of years, and that he had been injured by an explosion similarly caused on at least one former occasion while in appellant's employment.

The jury returned a verdict in favor of appellee, and from the judgment on the verdict this appeal is prosecuted.

UTT BROS., for appellant.

DARROW & MASTERS, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is urged in behalf of appellant that there is no evidence that the place to work furnished the deceased was unsafe; that when it became temporarily unsafe, it was owing to the negligence of a fellow-servant; and that appellant is not chargeable with negligence, resulting in the accident. We do not regard the facts as sustaining the contention that the deceased and the employee whose act caused the explosion were fellow-servants. They were not at the time of the accident, nor had they been at any time, so far as appears, co-operating with each other in the work which either of them was doing. Each was employed in a separate and distinct occupation. The deceased was a skilled workman, employed in a separate room at his trade as a cooper. The other was doing the work of a common laborer. Neither was in a position at the time of the accident to exercise an influence over the other promotive of

caution for their common safety. Illinois Steel Co. v. Bowman, 178 Ill. 351–356. The fellow-servant rule is fully stated in C. & N. W. Ry. Co. v. Moranda, 108 Ill. 576–582, and reiterated in many subsequent cases. That the relation did not exist, under the evidence in the present case, is, we think, beyond legitimate controversy, and the jury could not properly find otherwise.

It is urged that under the evidence it was the duty of the deceased to inspect all barrels received, and his duty to reject not only such as were defective, but also those which contained explosive material. We do not so understand the testimony. It does appear that the deceased inspected and frequently rejected barrels, but the weight of the evidence is to the effect that he did this rather as a mechanic, whose duty it was to see that the barrels were in good condition, and that he passed chiefly upon their soundness and physical suitability, without special reference to what they had contained. If, in the course of such examination, he came across a barrel which contained explosive material or gases, he might reject it. But there is evidence to the effect that such barrels were not required to be always rejected. Some of them were retained and were used to some extent at least, to be filled with glycerine. It is apparent that the deceased was not required or expected always to receive and examine the barrels before they were washed. That was frequently done by other employees. The jury were, we think, warranted by the evidence in concluding that the accident was not chargeable to negligence on the part of the deceased.

It is urged that the risk of the particular danger which caused his death was assumed by the deceased; that this danger was obvious and apparent; that explosive barrels were often delivered; that the deceased knew a lighted candle was used for their examination; and that he was injured by a danger incident to the service in which he was engaged. That danger can scarcely be justly said to have been necessarily incident to the service. It could only result from a lack of ordinary care on the part of those en-

gaged in examining the barrels with the candle. It was certainly not a danger incident to a cooper's employment, and it is begging the question to say, as appellant's attorneys do, that "it was not avoidable by the exercise of such ordinary and reasonable care as the law required of the employer."

It is charged in the declaration that appellant negligently failed to caution or warn or advise the new employee of the danger of inserting the lighted candle in a barrel without first ascertaining what the contents of the barrel were or had been. The employee was not so instructed. The danger was well known to the employer, or should have been. The same kind of accident had occurred before. It was not a danger which an inexperienced hand, without being cautioned beforehand, would have reason to expect or anticipate. There is evidence tending to show that after some former explosion an electric light had been used for insertion into the bung-hole of the barrels to light the interiors for examination, instead of the lighted candle. We cannot say that the employer had performed his duty to the employee when, after warning from one or more explosions, by which injuries had been inflicted, his men were allowed to resume or continue the use of the candle without being instructed as to the danger of using it in barrels containing explosive material, and without being warned that such barrels were liable to be found at any time among those delivered for washing and inspection. The deceased had, we think, a right to rely upon such instruction and caution being given to those whom the employer put at this work, and it was not his duty to undertake to watch and instruct such employees, especially when new and inexperienced men were set to work there without his knowledge. He had a right to presume that when put to this work employees would be properly instructed. In Met. R. R. Co. v. Fortin, 203 Ill. 454, 457, it is said that the assumption of risk resulting from the careless or wrongful acts of fellow-servants is subject to the implied undertaking of the master that he will use all reasonable care to furnish safe premises and ap-

pliances and competent and prudent co-employees. When the master fails to do this, such extra hazards are not among the risks which the employee assumes as part of his contract of service. See, also, U. S. Rolling Stock Co. v. Wilder, 116 Ill. 100–112; Pullman Palace Car Co. v. Laack, 143 Ill. 242–257; P., C., C. & St. L. R. R. v. Hewett, 102 Ill. App. 428, 437; Sinclair Co. v. Waddill, 200 Ill. 17–20; Chi. H. & B. Co. v. Mueller, 203 Ill. 558–564.

Complaint is made of an instruction in behalf of appellee which is, we think, subject to some criticism. The jury are not permitted to assess such damages as "in their opinion" the widow and minor children and next of kin may be entitled to. In the instruction complained of, however, the jury are told that this opinion must be formed "under the evidence in this case." While the phraseology might have been more wisely chosen, we are of opinion that on the whole the instruction was not calculated to mislead and does not warrant a reversal of a verdict which the evidence justifies. We are of opinion that the instructions requested by appellant, and which it deems improperly refused, were not applicable under the evidence. Instructions may state correct principles of law, but something more than this is requisite.

Finding no material error in the record, the judgment of the Superior Court must be affirmed.

*Affirmed.*