O'Fallon Coal Co. v. Laquet.

---

## O'Fallon Coal Co. v. William Laquet.

89    13
95   ⁷362

89    13
a198s 125

1. COAL MINES—*Liability of Owners for a Failure to Deliver Props, etc.*—The owner, agent or operator of a coal mine is required by the statute (R. S., Chap. 93) to keep a supply of timber constantly on hand, of sufficient dimensions to be used as props and cap pieces, and to deliver the same as required, so that the workmen may at all times be able to properly secure the workings for their own safety.

2. ORDINARY CARE—*What is Evidence of.*—In an action by a child to recover damages for the death of its parent by neglect of a mine owner to furnish timber for props as required by law, evidence showing that the deceased went to another room to borrow props but could get

none, is competent for the purpose of showing that the deceased was exercising due care for his own safety.

3. DAMAGES—*In Actions Under the Law Requiring Owners of Mines to Furnish Timber for Props, etc.*—In actions for damages sustained by reason of the death of a person occasioned by the willful failure of the owner of a coal mine to comply with the law requiring him to furnish timber for props, the amount of the recovery must be largely left (within the limits of the statute) to the discretion of the jury; and when proof is made of the age and relationship of the next of kin, suing, they may estimate the pecuniary damages from the facts proven, in connection with their knowledge and experience in relation to matters of common observation. Baltimore & O. S. W. Ry. Co. v. Then., Adm., etc., 59 Ill. App. 561.

4. SAME—*Nothing to be Allowed for Pain and Grief.*—In estimating the amount of damages in actions for the death of a person resulting from the failure of a mine owner to furnish timber for props in his mine as required by the statute, nothing is to be allowed for pain suffered by the deceased or for grief or sorrow inflicted upon his children. The damages must be limited to the injury suffered by reason of the loss of support his next of kin may have sustained on account of his death.

5. REMEDIES—*Technical Niceties Not to be Indulged in.*—Technical niceties ought not to be indulged in to defeat the provisions of the law enacted for the protection of a class of men who are confined in their labor to small space in mines far below the surface of the earth; a labor which inevitably becomes dangerous to human life unless constantly watched and guarded by those in charge of the mine.

6. REMOTE CAUSE—*Defined, etc.*—A remote cause is one which some independent force takes advantage of to accomplish something not the probable or natural effect thereof.

7. QUESTION OF FACT—*Proximate Causes.*—The question as to whether an act is a proximate cause is for the jury, under a proper definition of all the legal elements that go to make up such a cause.

8. JURORS—*Triers at Common Law—The Rule Not Adopted in This State.*—At common law the decisions of challengers were committed to triers and their decision was final and not subject to review on error, but the rule has never been adopted in this State.

9. TRIERS—*The Rule as to, Not Adopted as a Part of the Common Law.*—The method at common law of determining the qualification of jurors on challenges to the favor was a rule of practice in the English courts and not a part of the body of the common law of ·England which was adopted by the legislature of this State by the act entitled " An act declaring what laws are now in force in this State," approved February 4, 1819.

10. EXCESSIVE DAMAGES—*When $2,500 is Not.*—Where the deceased was a vigorous, healthy man, scarcely past the prime of life, capable of earning good wages, a judgment in favor of a minor son, the burden of whose care and support had been thrown upon the deceased by reason of the death of the son's mother, for the sum of $2,500, is not excessive.

Action in Case.—Death from negligence.  Appeal from the Circuit Court of St. Clair County; the Hon. William Hartzell, Judge, presiding.  Heard in this court at the August term, 1899.  Affirmed. Opinion filed March 16, 1900.

Statement.—This is an action on the case originally brought by Julius Laquet, Fannie Alexander and William Laquet, children and heirs at law of Nicholas Laquet, deceased, against appellant, for the alleged willful negligence of appellant in failing to furnish props and cap pieces at the request of the deceased, in order to make safe and secure the roof of a room of appellant's coal mine, in which deceased was working for appellant, mining coal; in consequence of which negligence, and while the deceased was in the exercise of ordinary care for his own safety, on the 27th of October, 1898, a portion of the slate roof of the room fell, and so severely injured the deceased, that he died the following day.

At the close of plaintiffs' evidence in chief, the court, on motion of defendant, dismissed the suit as to the plaintiffs Julius and Fannie, and it proceeded thereafter in the name of appellee, who was a minor, of the age of fourteen years at the death of his father.  The jury returned a verdict for the plaintiff for $3,000, of which $500 was remitted, when the court overruled defendant's motion for a new trial, and rendered judgment for plaintiff for $2,500 and costs, and the case comes here on defendant's appeal.

Charles W. Thomas, attorney for appellant.

Webb & Webb and Hamill & Borders, attorneys for appellee.

Mr. Presiding Justice Bigelow delivered the opinion of the court.

Of the errors assigned, we need notice only such as are noticed in the brief of counsel for appellant.

The action was brought under Secs. 14 and 16 of Chap. 93 of Hurd's Revised Statutes of 1897; Sec. 16 reads as follows:

"The owner, agent or operator, of every coal mine, shall keep a supply of timber constantly on hand, of sufficient length and dimensions, to be used as props and cap pieces, and shall deliver the same as required, with the miners' empty car, so that the workmen may at all times be able to properly secure said workings for their own safety."

Section 14 is as follows:

"For any injury to person or property, occasioned by any willful violations of this act or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby; and in case of loss of life by such willful violation or willful failure, as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons, who were before such loss of life dependent for support on the person or persons so killed, for a like recovery of damages for injuries sustained by reason of such loss of life or lives, not to exceed the sum of five thousand dollars."

It is insisted by counsel for appellant, that all of the witnesses who testified concerning the matter, substantially agreed that the props were delivered to the room of deceased on the first empty car that went to the room after the request for them was made, and hence there was no willful violation of the statute, and the court should have given appellant's instruction, taking the case from the jury. This view of the evidence is incorrect. There is evidence that on October 25th, props were needed to make the roof of the room safe, and were called for on that day, and the call was repeated on the 26th, but though cars were continually passing out of and into the mine, and from and to deceased's room, no props were supplied until the morning of the 27th, about the time, or after, the large body of slate had fallen against and injured deceased. Even if it were true that no props were called for until the 26th of October, none were supplied until too late to have prevented the injury, hence somebody must have been negligent in the performance of an urgent duty, and this negligence must be attributed to appellant; and whether, under all the circumstances, the negligence was "willful," was a question of fact for the

jury to determine, and the court did not err in refusing the instruction.

Another error relied upon for the reversal of the judgment, is that improper evidence was admitted to the jury, on behalf of the plaintiff, against the objection of the defendant.

A witness who worked in the room with, and who was a partner of deceased, was allowed, against defendant's objection, to testify that he, at the request of the deceased, went to another room to borrow props, but could get none; and the party of whom the request was made, was also allowed, against defendant's objection, to testify that the witness came to his room to borrow props but got none. While the evidence may not have been offered for the purpose of showing that the deceased was exercising due care for his own safety, yet it was proper for that purpose; and if it was proper for any purpose, no error was committed in admitting it; but if afterward it was used by plaintiff for the purpose of establishing that the defendant was generally neglectful in delivering props, then the defendant, to avoid the effect of such a use, should have asked an instruction confining the evidence to its legitimate sphere.

It is also urged that the answer of the witness Schmidthoefer, to a question asked him as to the reason why he quit working in the coal mine, was improper, because he answered, he " never had props enough;" but as the record discloses no objection to the question, the motion to exclude the answer was properly denied.

Objection was made to the manner of cross-examination by appellee's counsel, of one of appellant's witnesses, but the exception to the ruling of the court thereon is not well taken, and we discover no material error in the rulings of the court in admitting and excluding evidence.

Error is assigned in giving each of the three instructions asked by the plaintiff. The first instruction is as follows:

" 1. The court instructs the jury that if you find a verdict in favor of the plaintiff, then, in assessing the plaintiff's damages, you may consider the pecuniary benefits which

the plaintiff may have derived from the deceased, had the deceased not been killed, at any age of deceased's life; provided you further find from the evidence that the plaintiff is the next of kin, dependent upon deceased for support."

On request of appellant, the court gave to the jury the following instruction :

"If the jury find defendant guilty in this case, they can allow nothing for any pain suffered by the deceased, or for any grief or sorrow inflicted upon his children by his death; but the damage must be limited to loss suffered by reason of any loss of support his youngest child may have sustained on account of his death."

We are of the opinion that the measure of damages in an action brought under the mining law, for causing the death of a person, is the same as it is in an action brought under the provisions of chapter 70 of Hurd's Revised Statutes of 1897, for causing the death of a person as stated therein. And we are further of the opinion that the rule of damages laid down in each of the before named instructions given in this case was incorrect, and that the true rule was enunciated in B. & O. S. W. R. R. Co. v. Then, Adm'r, 59 Ill. App. 561, and the cases therein cited, and we refer to and follow that opinion without further quoting from it.

The court committed no error that injured appellant in giving appellee's instruction complained of, since appellee was entitled to an instruction more favorable to him than the one given.

The objection to appellee's second and third instructions is that they told the jury it was appellant's duty to furnish props "as requested," instead of "with the miners' empty car."

The objection is not of sufficient importance to require particular notice, further than to observe that technical nicety ought not to be indulged in to defeat the wise provisions of a law enacted for the protection of a class of men who are confined in their labors to small spaces far below the surface of the earth, and which inevitably become dangerous to human life, unless constantly watched and guarded by those in charge of the mine, above, as well as those below the earth's surface.

There is medical evidence to the effect that the deceased

was affected with valvular disease of the heart, as nearly all men are, and that such a disease may become fatal on the receipt of a shock to accelerate its fatality.   Upon this evidence appellant asked, and the court refused to give to the jury, the following instructions:

" The court instructs the jury that if they believe from the evidence that deceased had a disease of the heart and that he died of the disease, then the jury will find the defendant not guilty, although they may further believe from the evidence that the accident served to quicken the action of that disease and to hasten his death."

Bishop on Non-Contract Law, Sec. 41, defines a remote cause to be one which some independent force merely takes advantage of to accomplish something not the probable or natural effect thereof.   The question whether an act or omission is a proximate cause, is a question for the jury under a proper definition of all the legal elements that go to make up such a cause.   Bishop on Non-Contract Law, Sec. 455; 1 Shearman & Redfield on Negligence, 4th Ed., Sec. 55; Pullman Palace Car Co. v. Laack, 143 Ill. 242.

The instruction does not undertake to define what a remote or what a proximate cause is.   It is not necessary that the falling of a large section of slate roof, against or upon the deceased, was the entire cause of his death.   Bishop on Non-Contract Law, Secs. 39, 518.

Although deceased might not have lived many years, or even days, if the slate from the roof of the room in which he was working had not fallen upon him, yet, if by so falling, it produced a shock from which he did not rally, it must be said that the falling slate was as certainly the proximate cause of his death as the shooting of a bullet into his body, followed by death, would have been.   Bare possibilities, in a civil case, can not be permitted to overcome probabilities that are almost certain.   The instruction, had it been given, would have opened into a field that has no boundaries, and it was properly refused.

On the examination of one of the jurors called to try the case, it appeared on his *voir dire* that he was a member of an organization known as the " Miners' Union," which he

admitted was of such a character that if he sat on the jury, and agreed to a verdict against the plaintiff, he would be distrusted by the association and embarrassed on account of the verdict.

Thereupon appellant's counsel challenged the juror to the favor, and demanded triers at the common law. The trial judge then asked the juror if there was anything that would prevent him from rendering a fair and impartial verdict, after hearing the evidence and the instructions of the court; to this question the juror answered there was not, and that he would be governed by the instructions of the court. The demand for triors was then renewed, but the court denied the demand and the defendant excepted, when the counsel, having already exhausted his peremptory challenges, refused to accept the jury or to proceed further with the examination, and by direction of the court the jury were sworn to try the case.

At the common law, challenges for cause were divided into challenges for principal cause, and challenges to the favor. The former arose out of a state of facts which authorized a conclusive presumption to be drawn that the juror was disqualified. The latter arose out of a state of facts that only gave rise to a suspicion of unindifference to the juror. The former challenge was tried by the court; the latter was tried by persons appointed by the court, called triors, who were authorized to determine whether a person challenged to the favor, was qualified to serve as a juror. Vol. 12, Encyclopedia of Pleading and Practice, 429; Vol. 2, Bouvier's Law Dictionary (Rawle's Ed.), 1142.

By the practice at common law, it is possible the court erred in refusing appellant's request for triors to determine the qualifications of the juror, and if so, the question to be determined is, has that rule of practice been adopted in this State? We are unable to find and have not been referred to any case where it has been so held.

In Coughlin v. The People, 144 Ill. 140, Mr. Justice Bailey, speaking for a majority of the court, at page 186, said:

" At common law the decision of challenges to the favor

was committed to triors, and it was held that their decision was final, and not subject to review on error.

But that rule has never obtained in this State, as was expressly held in Winnesheik Ins. Co. v. Shueller, 60 Ill. 465."

It is true the language of both of the cases was used in determining the question as to whether the ruling of the trial judge, in passing upon the competency of a juror, could be reviewed by an Appellate Court, but we think the court assumed that it was well understood that the common law practice of selecting triors to pass upon the competency of jurors on challenge to the favor, had never been adopted in this State, but that duty devolved upon the court whose rulings could be reviewed.

The method at common law of determining the qualification of jurors on challenges to the favor was a rule of practice in the English courts, and was not a part of the body of the common law of England, which was adopted by the legislature of this State, by an act entitled, " An act declaring what laws are now in force in this State," approved February 4, 1819. See Revised Laws of 1829, 102; also Sec. 1, Chap. 28, Hurd's R. S. 1899.

The ruling of the court in denying triors to examine the juror was not error.

It is also assigned for error that the verdict is against the law and the evidence, and that the damages are excessive.

Without stating at length what the evidence was, it is enough to say that it was in every way sufficient to sustain the verdict on which the judgment was rendered. Appellant has no reason to complain, and we do not understand that it does complain (aside from the refused instruction hereinbefore referred to) that the jury were not instructed in its behalf to the extreme verge of the law; and we think it impossible that the jury could have been misled to defendant's injury by the instructions as given, whatever might have been said of some of them, had the jury found for the defendant.

Concerning the amount of damages after deducting the remittitur—considering the fact that deceased was a vigor-

ous, healthy man, scarcely past the prime of life; that he was capable of earning good wages; that the entire care and burden of looking after, and providing for his minor son, had, on account of the previous death of his wife, fallen upon him; and the further fact that there is no inflexible rule by which the damages in a case like this can be measured, but much must be left to the discretion of the jury, we do not feel justified, in the absence of any material error in the record, in reversing the judgment on account of the amount of damages, and it is affirmed.