## Chicago & E. I. R. R. Co. v. Mary E. Mochell.

1. QUESTIONS OF FACT—*Whether the Rate of Speed of a Train is the Proximate Cause of an Injury.*—Whether the negligence of a railroad company in running its trains at a greater rate of speed than allowed by an ordinance, was the proximate cause of an injury, is a question of fact for the determination of a jury.

2. PRESUMPTIONS—*From the Violation of an Ordinance by a Railroad Company.*—Where a railroad company runs its trains at a greater rate of speed than that allowed by an ordinance, whatever presumption of negligence arises from the violation of the ordinance, may be regarded as admitted.

3. INJURIES—*Liability of a Defendant—Causes Proximate and Remote.*—Every defendant is to be held liable for all the consequences which might have been foreseen and expected as the result of his conduct, but not for those which he could not have foreseen and was under no moral obligation to take into consideration.

4. INSTRUCTIONS—*Causes Proximate and Remote.*—Where an action for personal injuries raises a question of remote and proximate causes, the jury should be instructed that so far as the case turns upon that issue the defendant is to be held responsible, if the injury was a natural consequence of his alleged negligence, which might have been foreseen by any reasonable person; but he is not to be held for injuries which could not have been foreseen or expected as the results of his negligence or misconduct.

5. PROXIMATE CAUSE—*Defined.*—A proximate cause is one which stands next in causation to the effect, not necessarily in time or space, but in causal relation.

6. SAME—*Practical Construction by the Courts.*—The practical construction of the term "proximate cause" by the courts is, that it is a cause from which a man of ordinary experience and sagacity could see that the result might probably follow; but it is not to be understood

C. & E. I. R. R. Co. v. Mochell.

as requiring that the particular result might have been foreseen; for if the consequences follow in unbroken sequence from the wrong to the injury without any intervening efficient cause, it is sufficient.

7. INTERVENING EFFICIENT CAUSE —*Defined.*— An intervening efficient cause is defined to be a new and independent force which breaks the connection between the original wrong and the injury, and itself becomes the direct and immediate cause of the injury.

8. NEGLIGENCE—*Of Two Different Defendants.*—When the negligence of the servants of a street car company and a steam car company both contribute to an injury, although neither alone constitutes an efficient cause, both are alike liable as though each had been guilty of the negligence without the other.

9. RAILROADS—*Running Trains at an Unlawful Rate of Speed, When a Proximate Cause of an Injury.*—Where a railroad passenger train of steam cars was approaching the crossing of an electric street car track in a city at a rate of speed greater than that. allowed by the ordinances, and collided with an electric street car, which, notwithstanding the passenger train had whistled for the crossing and the flagman was ringing the bell at the time, kept on its way at full speed, crashed through the railroad gates and ran upon the track in front of the approaching train and was struck by the engine, and one of the passengers in it injured, *it was held* that the passenger train was the efficient cause of the accident.

10. DAMAGES—*When $15.000 is Excessive.*—A female passenger upon an electric car in the city of Chicago was injured in a collision with a railway passenger train in February, 1897. She was thrown some distance by the force of the collision but was able to get up and go to a cottage near by. She was considerably bruised and experienced a severe nervous shock; in March following she was treated for an organic disturbance of the valves of her heart and in October was suffering from an attack of nervous prostration. It appeared afterward that her nervous condition was not necessarily permanent and that there was nothing in her condition from which she might not recover. The day after the accident she rode home in a buggy and about six weeks afterward, attended church. The year following she learned to ride a wheel and would go generally about three miles at a time. Before her injury she was employed as a stenographer and type-setter in a newspaper office and earned from $3.50 to $4 per week. *It was held* that a verdict for $15,000 was excessive.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the April term, 1901. Affirmed, upon remittitur, May 10, 1901. Rehearing allowed. Original opinion refiled July 16, 1901. Remittitur filed as suggested and judgment affirmed July 19, 1901.

W. H. LYFORD and S. A. LYNDE, attorneys for appellant.

EDGAR BRONSON TOLMAN and EDWARD RYAN WOODLE, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from a judgment recovered by appellee against appellant jointly with the Calumet Electric Street Railway Company, for personal injuries. The latter company does not join in this appeal.

The accident occurred about one P. M., of February 25, 1897. Appellee was a passenger on a car of the Calumet Electric Street Railway Company, the tracks of which, running east and west, cross appellant's railway at right angles therewith, upon One Hundred and Third street. As the street car approached the crossing from the east, and when it was still about a block and a half away, appellant's flagman at the crossing lowered the gates across One Hundred and Third street, because of the approach of a freight train from the south and a passenger train from the north. The former was moving slowly, the latter at a more rapid rate of speed. The passenger train whistled for the crossing and the flagman was ringing his bell. Nevertheless the electric car kept on its way at full speed, crashed through the gates and ran upon appellant's track in front of the rapidly moving passenger train. It was struck by the engine, broken into pieces which were thrown upon both sides of appellant's tracks, the motorman and conductor were killed, and appellee, who was sitting in the car, received the injuries complained of. There is evidence tending to show that the motorman made no effort to stop the street car. It is said that both he and the conductor were under the influence of liquor, and there is slight evidence indicating as a possibility that the street car may have been out of order, and beyond ready control.

The negligence charged against appellant is that its passenger train which struck the electric car was running at an excessive rate of speed in violation of city ordinances. Two ordinances are referred to. One of these divides the city into districts, and provides that in the third district, where the accident occurred, the rate of speed of

passenger trains shall not exceed thirty miles an hour provided certain protecting walls, fences, gates, etc., shall have been constructed on each side of the tracks.    Until such protecting walls and fences shall have been constructed it is provided that an old ordinance limiting the rate of speed to ten miles an hour within the corporate limits shall remain in force.    It seems to be conceded that the requirements of the ordinance authorizing a speed of thirty miles an hour in the locality where the accident occurred had not been complied with by appellant, that the ordinance forbidding a rate of speed of more than ten miles an hour was still in force, and that appellant's passenger train was exceeding that rate.

The first question to be considered is whether appellant's violation of the ordinance as to speed, was a proximate cause of the accident.    It is contended by appellant that the proximate cause of the collision was not the speed of appellant's train, but the criminal recklessness of the servants of the street car company; that the engineer could not have reasonably foreseen or anticipated in the light of the attending circumstances that the street car men would recklessly disregard all signals, crash at full speed through the crossing gates and run their car on appellant's tracks immediately in front of an approaching train; that appellant or its engineer could not reasonably foresee nor anticipate that the speed of his train might result in such collision; and it is urged that unless such result could have been reasonably foreseen or anticipated under the circumstances the speed of the train was not the proximate cause of the accident.

Whether or not the negligence of appellant in lawfully running its train at a rate of speed exceeding ten miles an hour was the proximate cause of the injury is a question of fact.    West Chi. St. R. R. Co. v. Feldstein, 169 Ill. 139 (141);  C. & E. I. R. R. Co. v. Hines, 183 Ill. 482 (485). While there is some conflict of evidence as to what the rate of speed of appellant's train was, it is substantially conceded that it was not less than thirty miles an hour at the time

and place of collision.   The violation of the ordinance, and whatever presumption of negligence arises therefrom, may be regarded as admitted.   These facts conceded, were the jury justified in finding that the accident and the resulting injury were the natural and proximate consequences of the act complained of, viz., the unlawful speed of the train ?

'What constitutes proximate cause is ably discussed in an opinion by Mr. Chief Justice Lawrence in Fent v. T. P. & W. Ry. Co., 59 Ill. 349.  Premising that there are not many maxims which touch so closely upon metaphysical speculation as " *causa proxima, et non remota, spectatur*," the learned writer of that opinion quotes with approval a statement of the principle from Parsons on Contracts that " every defendant shall be held liable for all of those consequences which might have been foreseen and expected as the results of his conduct, but not for those which he could not have foreseen and was therefore under no moral obligation to take into consideration."   In that case it was held that the sparks from a locomotive which set fire to a building near the track, from which the fire was communicated to buildings some distance away, were the proximate cause of the destruction of the latter buildings; and the court says (p. 363) that if the question of remote or proximate cause is raised, " the jury should be instructed that so far as the case turns upon that issue, the company is to be held responsible, if the loss is a natural consequence of its alleged carelessness, which might have been foreseen by any reasonable person, but is not to be held responsible for injuries which could not have been foreseen or expected as the results of its negligence or misconduct."   In Am. Exp. Co. v. Risley, 179 Ill. 295, the opinion quotes with approval from Shearman & Redfield on Negligence (p. 299), that " the practical construction of ' proximate cause ' by the courts is a cause from which a man of ordinary experience and sagacity could foresee that the result might probably follow."   In Pullman Palace Car Co. v. Laack, 143 Ill. 242 (260), it is said that the principle stated in the Fent case, as above quoted, " is not to be understood as requiring that the par-

ticular result might have been foreseen, for if the conse-
quences follow in unbroken sequence from the wrong to the
injury without an intervening efficient cause, it is sufficient
if, at the time of the negligence, the wrongdoer might, by
the exercise of ordinary care, have foreseen that some injury
might result from his negligence." An intervening effi-
cient cause is defined to be " a new and independent force
which breaks the causal connection between the original
wrong and the injury, and itself becomes the direct and
immediate, that is, the proximate cause of an injury."
(Quoting from Bishop on Non-Contract Law.) The test is
said to be, " was it a new and independent force, acting in
and of itself in causing the injury, and superseding the
wrong complained of so as to make it remote in the chain
of causation." It is further said (p. 262) that " an efficient
cause is simply the ' working cause,' or that cause which
produces effects or results, and a proximate cause is that
which stands next in causation to the effect, not necessarily
in time or space, but in causal relation." In the present
case there is no dispute as to the negligence of the servants
of the street car company, and if the unlawful speed of
appellant's train and the negligence of the street car com-
pany's servants both contributed to the injury, although
neither alone constituted an efficient cause, both are alike
liable as though each had done all without help. Bishop
on Non-Contract Law, Section 518; Pullman Palace Car
Co. v. Laack, *supra* (p. 262–3), and cases cited; Village of
Carterville v. Cook, 129 Ill. 152 (156); City of Peoria v.
Simpson, 110 Ill. 294 (302); City of Joliet v. Shufeldt, 144
Ill. 403 (410). If the negligence of the appellant, or in other
words, the unlawful speed of appellant's train, was an effi-
cient cause of the accident, without which the injury would
not have occurred, then such unlawful speed must be deemed
a proximate cause.

The jury have, by their verdict, found appellant liable,
and it is insisted that there is no evidence sufficient to war-
rant such finding, nothing to justify the conclusion that the
accident was caused in any degree by the speed of appel-

lant's train; that it is mere conjecture to say the accident would not have happened if the train had not been running faster than ten miles an hour before it reached the crossing. Of course it is true, the conditions otherwise being just as they were, that the accident would not have occurred if appellant's train had not reached the crossing just at the time it did. If it had reached the point of contact with the street car a few moments later, probably the latter would by that time have cleared the track and gotten over out of the way of the train. If, on the other hand, appellant's train had been moving at a considerably increased rate of speed, equally unlawful, the train itself might and probably would have passed the crossing ahead of the street car. In the latter case the unlawful rate of speed would have prevented the accident. The only possible way in which the speed of the train could have constituted an efficient cause contributing to the accident, taking all the conditions as they existed into consideration, was in bringing the train to the point of contact at or about the time the street car reached the same point. This it undoubtedly did, and the jury was warranted in so finding.

But it is urged by appellant's attorneys that the test is not whether the collision would not have occurred if the train had not been running at a rate of speed greater than ten miles an hour, but whether the engineer could reasonably have anticipated or foreseen such an accident as likely or liable to result from the unlawful speed. This also was a question of fact for the jury, and there is evidence tending to show, we think, that the danger of collision at this street car crossing would be likely to be enhanced by an increased rate of speed, in case by reason of negligence of the street car motoneer, derangement of its machinery, failure of its electric current at a critical moment or other like cause, a street car should be in the way of a train. There is evidence tending to show that the train would have been more readily under control of the engineer at ten miles an hour than at thirty or forty, and might have been stopped before reaching the point of contact, or

its speed so checked as to lessen the force of the collision and possibly have prevented the injury to appellant. We are of opinion that the engineer and especially the officers of the appellant who arranged the time-table for this train so as to require of the engineer an unlawful rate of speed might, by the exercise of ordinary experience and sagacity, have foreseen the danger of an accident at that crossing. It is quite true, we think, that neither the appellant's officials nor the engineer could be expected to foresee an accident of the precise character of that in controversy. With the gates down, flagman at his post, bell ringing and whistle sounding, it would be reasonable to presume that no conductor or motorman would voluntarily run a street car through the gates and onto the track in front of a rapidly moving train. But, as said in the Laack case above referred to, it is not essential to liability that the particular result might have been foreseen, but " it is sufficient if at the time of the negligence the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence."

It is true, doubtless, that the negligence of the street car company's servants was an intervening cause helping to produce the injury, but not " acting in and of itself in causing the injury." The accident would not have occurred by reason of their misconduct alone.

Complaint is made of instructions to the effect that a rate of speed in excess of the rate authorized by ordinance is negligence, as a matter of law. A violation of the ordinance as to the rate of speed having been shown, the statute requires that damages so inflicted shall be presumed to have been done by the negligence of the corporation guilty of such violation. (Rev. Stat., Chap. 114, par. 62.) The instructions were proper. T. H. & I. R. R. Co. v. Voelker, 129 Ill. 540 (555).

Objection is made to the eighth instruction that it omits in making the preliminary statement "in case you believe," to add that such belief must be from the evidence, but such omission, if omission it be, is supplied in the succeeding

phraseology of the instruction, wherein the jury are told " if from all the evidence you believe," etc.   The instruction as a whole requires the finding to be based upon the evidence.

We have considered carefully such objections as are urged to other instructions, and are of opinion that as a whole the latter presented the law applicable as favorably to appellant as it was entitled.

. It is urged that the verdict awarding appellee $15,000 is grossly excessive.   There is evidence tending to show that appellee was in good health prior to the accident, which occurred February 25, 1897.   She was able to get up after being thrown some distance by the force of the collision, and went over to a cottage near by.   She was considerably bruised, and appears to have experienced a severe nervous shock.   In March she was visited by the witness, Dr. Church, who subsequently treated her, and testifies in her behalf.   He is a specialist in nervous and mental diseases. He testifies that he found an organic disturbance of one of the valves of the heart, the sounds indicating that the valve did not close completely, creating a leakage, and for that reason appellee's circulation was bad.   On cross-examination the witness says :

" When I saw her in March, 1897, it struck me she was not suffering from much of anything.   It was marvelous how well she could be after such an experience, and the only thing practical was the valvular disturbance of the heart.   The other indications were not of any serious trouble at that time."

The witness next examined appellee in October following, and found her worse than in March previous, but seems to suggest that he thinks "there is an influence in connection with her surroundings that worked on her. Ordinarily nervous people do best among strangers." From that examination the witness was of opinion " she was suffering from a serious attack of nervous prostration, with some elements of Graves' disease," which is also a nervous disease, otherwise called "exopthalmic goitre," producing an enlargement of glands in the front of the neck and prominence of the eyeballs.   It is shown that appellee had

some predisposition to goitre, which might, says the witness, be developed by and as a natural consequence of the injury. Since that October examination the witness has seen appellee at intervals of a few weeks or months. Her "heart is now better than it was; that is, the valve only leaks when she stands up or walks about. It is not as rapid as it was." Other symptoms are not so bad, and she has more nervous and physical strength. In her present condition, the probability is that marriage resulting in child-birth would be very serious, and might aggravate her illness to a point that it would result fatally. The witness thinks she is better than she was, both in respect to the nervous prostration and the Graves' disease. He states that Graves' disease sometimes gets well; that he does not mean to say she will not recover from it, and that in this case it is improving; that her nervous condition is not necessarily permanent; that, taking into consideration all sickness, there is nothing in her condition that she may not recover from, excepting the valve of the heart. "I think that is with her for life and will always reduce her health qualities." The witness testifies that the patient has been improved by trips away from home, and states further that "a patient that has a law suit pending and is in a nervous condition is affected by that, and I think that, as a rule, until it is disposed of, the patient is more or less affected mentally by the pendency of it." Appellee herself states that she rode home in a buggy the day of and after the accident; attended church Easter Sabbath about six weeks thereafter; that she learned to ride a wheel in the summer of the year following, and would generally go, she thinks, not more than three miles at a time. There is no evidence of any heart trouble before the injury, though her physician states she might have had it and apparently been well. Physicians called by the defendants, and who examined her immediately after the accident, state that they found no symptoms of heart trouble, and that, from their observation, they think appellee can be permanently cured. Dr. Patrick, a specialist in nervous diseases, who examined her at Dr. Church's

office, states that after getting appellee to walk up and down the room rapidly a number of times, he was able to detect a faint heart murmur; but, except for that, found appellee's heart perfectly normal, and, in his opinion, the murmur was no evidence of any trouble with the heart; that it was a hæmatic murmur, due to the anæmic condition of appellee's blood, which was thin or impoverished. He concluded from his examination that appellee was troubled with nervousness, but not affected with Graves' disease, nor disease of the heart. It appears from appellee's evidence that she had earned, when employed before the accident as a stenographer, as a type-setter, and in a newspaper office, from $3.50 to $4.50 per week.

There is no fixed rule of compensation in damages for personal injuries. It is impossible in the nature of the case that there should be. Her physician states that in her present condition, in his opinion, appellee is equal to not more than a tenth or fifteenth of the amount of work and effort she was capable of when well. It appears from the testimony of her own physician and witness that there is nothing in her condition not curable except it may be the alleged trouble in her heart. This, however, he states is better than it was, and only exists when she stands. We can not avoid the conclusion that it is by no means clear appellee's injuries are of a permanent character. If the heart trouble has already been partially cured or has disappeared, assuming that organic trouble, caused by the shock of the accident, has before existed, no reason is given in the testimony for supposing that it will not continue to improve, as the causes which may have tended to keep up the nervous disorder, such as anxiety of friends or the pending law suit, are in part, at least, removed. The verdict of the jury implies by necessary intendment everything necessary to sustain it. While there is evidence that the results of the accident have been serious, we do not regard it as proving they are permanent or incurable. Should appellee within a short time hereafter recover her health entirely, as there is evidence tending to show she

may do, the amount awarded by the verdict would be more than in justice and propriety she ought to receive as reasonable compensation for the injuries complained of. We will not prolong the discussion, but are of opinion that justice will be more nearly satisfied if the amount of the verdict is somewhat reduced. If, therefore, appellee shall within ten days file a remittitur of $5,000, the judgment of the Superior Court will be affirmed, but not otherwise.

Affirmed on remittitur (July 16, 1901).

PER CURIAM:

A rehearing having been allowed on the petition of appellee, and the cause having been again fully considered on the record and upon said petition and the answer thereto, it is ordered that the opinion of the court heretofore filed herein be and the same is hereby refiled herein as the opinion of the court upon the rehearing, and that the judgment heretofore entered herein be and the same is hereby re-entered. Affirmed.