# Alexander B. Sherwood v. Arthur Rieck, by His Next Friend.

1. PRACTICE—*What Defects Are Cured by Verdict.*—While a verdict will cure a defective statement of a good cause of action, it will not supply the want of a statement of a good cause of action.

2. SAME—*What Defects in a Declaration Are Not Waived by a Failure to Demur.*—Innate and substantial defects in the declaration which would render the declaration insufficient to sustain a judgment are not waived by a failure to demur to the declaration.

3. SAME—*Question Raised by a Motion to Direct a Verdict for the Defendant.*—A motion made at the close of all the evidence, to direct a verdict for the defendant, raises the question whether there is evidence which, with all the inferences justifiably to be drawn therefrom, is sufficient to sustain a verdict for the plaintiff should such a verdict be returned.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded. Opinion filed December 16, 1902.

**Statement.**—This is an action for personal injuries.

Appellee, when a boy nearly sixteen years of age, was employed by appellant feeding sheets of paper into a lithographing press. It is asserted by his attorneys that appellant's "foreman set him to work upon a new, strange, experimental and dangerous machine." This machine was an ordinary laundry mangle. It was used in appellant's establishment to remove the dampness from large sheets of paper, preparatory to being printed. It consisted of two hollow cylinders, each four feet long, placed vertically one above another. The upper and smaller of these cylinders was of iron and was heated by a perforated gas pipe passing through its center. The lower cylinder, sixteen and a half inches in diameter, consisted of a wooden shell wrapped around with a woolen blanket. The lower cylinder could be moved up and down by a lever. When the machine was about to be used the upper cylinder was heated, and when ready, the lower cylinder was brought up against it and held in place by five weights aggregating

about 100 pounds.   The cylinders were revolved by power communicated through a belt.

Appellee's account of the occurrence is that he was told by the foreman the morning of the accident that the latter wanted him to feed the mangle.   He testifies as follows: "I went over to the heating press and he says 'Wait a couple of minutes until the roller gets hot enough and then go ahead.'   I waited a little while and went and got some paper to put on what we call the feeding board and walked around, got a little box that I was usually standing on, had to stand on, to feed the machine.   So I put up the paper, got on the box to straighten it out, and got a hold of it to pull it around to get it even with the machine to go straight in the roller.   While I was doing that the paper kind of stuck a little bit, and I kind of jerked a little bit hard and I slipped—the box slipped from under me—and I fell right toward the machine and caught my fingers and run it in to the elbow."   He had fed the machine six or seven times before, according to his own statement.

There is controversy over some of the material facts. Appellee says the feeding board came up even with his shoulder, and that this made it necessary for him to get something to stand on.   He therefore, as he says, got a box which was used for other purposes, the slipping of which, he says, caused the accident.   This box was about twelve inches wide, fifteen inches long and about eight inches high.   Others who testify in his behalf state that the feeding board was about to the top of his chest or higher, when he stood on the floor.   On the other hand there is evidence tending to show that the height of this feeding board was such that it came a little above his waist; and there is evidence to the effect that it was the same height from the floor that the feed board he had been using every day on a lithographing press was above the platform on which he stood when feeding that press. Appellee states also that he had fed the mangle sitting on a box about twenty-four inches high the evening before.

It is not claimed that he was ever directed to use that or any box to stand or sit on to feed the mangle. Appellant's theory is that appellee was sitting on two boxes which he had placed one on top of the other, waiting for the foreman to tell him when the iron cylinder was sufficiently heated; that he was rocking himself back and forth, when the upper box slipped, and that in throwing out his arms to catch himself from falling he threw his left hand in between the rollers. It is said this is the story frequently told by appellee, after the injury, and there is testimony tending to corroborate this theory.

The declaration originally consisted of one count. It was subsequently amended, three new counts being added. At the close of all the evidence, all except the third additional count were withdrawn from the jury, by instructions. The material part of the third count upon which the cause was submitted is as follows: " And plaintiff avers that said machine or press was dangerous, and that it was dangerous to control and operate, and the place where the plaintiff was obliged to be in and about the operation of the said machine, and the surroundings of said machine, were unsafe and dangerous, all of which was known to the defendant, or might have been known to him by the use of reasonable care and diligence; that it then and there became and was the duty of the said defendant to notify and warn the said plaintiff, who was then and there inexperienced and of immature years, of the dangerous character of the said machine and the dangers surrounding the said machine and the dangers incident to the operation and control of the same, which said dangers were then and there unknown to the plaintiff; but therein the defendant wholly failed, and on the contrary thereof, carelessly, negligently and improperly failed and neglected to notify and warn the said plaintiff of the said dangers, so that by reason of the premises the plaintiff, while so engaged at work on said machine, to wit, on the day and year aforesaid, and while using all due care and caution on his part, was pushed or thrown and precipitated upon and against said machine, and his left hand, arm and wrist were then

and there caught in said machine and he became and was by reason of the premises greatly and severely and permanently injured," etc., etc. No cross-errors have been assigned.

CHURCH, McMURDY & SHERMAN, attorneys for appellant.

WILLIAM J. MOYER and M. H. GUERIN, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is first contended by appellant's attorneys that the " third additional count of the declaration is insufficient to sustain any judgment whatever." At the close of the evidence, appellant moved the court, in writing, to instruct the jury to find a verdict of not guilty as to each count of the declaration. This motion was granted as to all except the third additional count, and the jury were instructed accordingly. As to that count the motion was denied, and it is contended that in denying the motion and refusing to instruct the jury to disregard that third additional count the court erred.

It is provided in the practice act (R. S., Chap. 110, Sec. 51), that " if one or more of the counts in a declaration be faulty, the defendant may apply to the court to instruct the jury to disregard such faulty count or counts." This was the practice pursued in the case before us. The count in question, after stating that the machine and the surroundings were dangerous, charges that it was the duty of the defendant to warn plaintiff of the dangerous character and dangers surrounding the machine, which were unknown to plaintiff, but that defendant carelessly, negligently and improperly failed and neglected so to do, so that by reason of the premises the plaintiff, while engaged in work on the machine and using all due care and caution, " was pushed or thrown and precipitated upon and against said machine," and thereby injured. It is evident from examination of this count that no causal connection is therein shown between the alleged failure to warn of what are said to have been

the dangerous character and surroundings of the machine, and the alleged force which it is said threw the plaintiff against it and .inflicted the injury. No matter how dangerous the machine and surroundings were, if in fact the plaintiff was thrown upon the machine by some outside force, the accident was not the result of the defendant's negligence in failing to warn that the machine itself was dangerous. It is charged that "by reason of the premises," that is, of the alleged dangers, and the failure to warn the plaintiff of them, the latter was thrown on the machine. But how or by what means he was so thrown is not stated; and the fact that a machine would be dangerous to one thrown upon it when it is in motion does not necessarily imply any duty to warn an employe of such a patent fact. Most machinery operated by power would be dangerous to one forced into it, but in such case the forcing cause and not the machine would be the proximate cause of any injuries thereby inflicted. This declaration does not state a single fact, however, indicating in what respect the machine in question was dangerous, nor why or how it became the duty of the defendant to warn plaintiff that he was or might be liable to be "pushed, thrown or precipitated upon and against" it, nor wherein the plaintiff's injuries were the result or in any way the consequence of the alleged failure of the defendant to warn him. For all that appears, the plaintiff may have been thrown against the machine by some malicious stranger, whose act the defendant had no reason to anticipate and for which he was in no way responsible, and which would not have been prevented, no matter how frequently or explicitly the plaintiff had been warned of the alleged dangerous character and surroundings of the machine itself. See Hinchliff v. Rudnick, 70 Ill. App. 148–150. In other words, the declaration does not charge, nor state facts which imply, that the accident and the resulting injury were the natural and proximate consequences of the act complained of, namely, the failure to warn the plaintiff of the alleged dangerous character of the machine and surroundings. It rather implies the existence of an interven-

ing efficient cause, which itself became the proximate cause of the injury.   C. & E. I. R. R. Co. v. Mochell, 96 Ill. App. 178–182.   That the declaration fails to present a state of facts implying any actionable negligence on the part of the defendant is, we think, unquestionable.   As is said in C. & A. R. R. Co. v. Clausen, 173 Ill. 100–105, " It is not sufficient in a declaration to allege that it is the duty of the defendant to do certain things, but the declaration must state facts from which the law will raise the duty.   (Ayers v. City of Chicago, 111 Ill. 406.)"   In Funk v. Piper, 50 Ill. App. 163–164, Justice Gary remarks :   " Elementary principles are constantly disregarded in declaring in actions for negligence.   Many cases come before us in which the declarations allege simply that it was the duty of the defendant to do the thing described, or that the defendant was negligent in not doing it, in either case without averment or recital of facts or circumstances from which the law will imply, and therefore the court determine, that such duty existed."

It is urged, however, that any defects in this declaration are cured by the verdict.   The rule in this respect, briefly stated, is, that while a verdict will cure a defective statement of a good cause of action, it will not supply the want of a statement of any cause of action at all.   In C. & A. R. R. Co. v. Clausen, *supra*, on page 103, it is said :   " At the common law, independently of any statute, the rule was and is ' that where there is any defect, imperfection or omission in any pleading which would have been a fatal objection on demurrer, yet if the issue joined be such as necessarily required on the trial proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict.' (1 Chitty's Pl. 673.)   This rule was quoted and approved in Keegan v. Kinnare, 123 Ill. 280, and C. & E. I. R. R. Co. v. Hines, 132 Id. 161.   The intendment in such case arises from the joint effect of the verdict and the issue upon which

it was given, and if the declaration contains terms suffi-ciently general to comprehend, by fair and reasonable intendment, any matter necessary to be proved, and without proof of which the jury could not have given the verdict, the want of an express statement of it in the declaration is cured by verdict. Under this rule a verdict will aid a defective statement of a cause of action, but will never assist a statement of a defective cause of action. (1 Chitty Pl. 681.)" We are of opinion that this declaration was not aided by verdict.

It is urged that as the objection goes to the sufficiency of the declaration, it should have been taken advantage of on demurrer, and that it is too late to urge it after verdict, citing Chicago, Burlington & Quincy R. R. Co. v. Harwood, 90 Ill. 426. Without stopping to state the very evident distinction between the declaration in that case and that under consideration here, it is sufficient to say, quoting again from the Clausen case, *supra* (p. 102): "While the defendant, by pleading over, waived its demurrer and the right to assign error upon the ruling of the court on the demurrer, it did not waive innate and substantial defects in the declaration which would render the declaration insufficient to sustain a judgment." In the case before us there was no demurrer, but the principle stated is equally applicable. World's Columbian Exposition v. Republic of France, 91 Federal Rep. 64–69; see also, C. & E. I. R. R. Co. v. Hines, 132 Ill. 161–166.

While we are of opinion that the declaration fails to state a cause of action, and can not therefore be aided by verdict, the objections to it were sufficiently preserved, independently of the motion in arrest of judgment. A motion was made at the close of all the evidence, to direct a verdict for the defendant. Such motion raises the question whether there is evidence which, with all the inferences justifiably to be drawn therefrom, is sufficient to sustain a verdict for the plaintiff should such a verdict be returned. Boyle v. I. C. R. R. Co., 88 Ill. App. 255–257, and cases there cited. In the present case there is undisputed evidence tending to

Sherwood v. Rieck.

show a different state of facts from that charged in the declaration. It appears from appellee's own statement that he was not thrown or precipitated against the machine by reason of any failure of the appellant to warn him of the dangerous character of the machine or surroundings, but that he fell or slipped from a box he had himself procured, without direction or suggestion from any one, and had placed by the side of the machine to stand or sit upon. No failure to warn of the alleged dangerous character of the machine was responsible for this fall, and the box, however dangerous in that particular place, for the use to which it was put, was not a part of the machine nor of its "surroundings." It was foreign to its purpose, uses or design. The undisputed evidence, therefore, does not tend to sustain the cause of action stated in the declaration and "a party who has no cause of action can not sustain a judgment in his favor." C. & A. R. R. Co. v. Clausen, *supra*, p. 105.

It appears that the court refused to instruct the jury to disregard the count of the declaration under consideration. This refusal is assigned as error. We are of opinion that the plaintiff had a right to have the jury instructed to disregard this third additional count of the declaration. It is said, in Consolidated Coal Co. v. Scheiber, 167 Ill. 539–542, that only such faults in a count of the declaration as would render it insufficient to support the judgment can be reached under the provision above referred to, contained in the fifty-first section of the practice act, by instructions to disregard such count. "All others are waived by taking issue upon it; for the general rule is, that all defects appearing upon the face of the pleading are waived by taking issue upon it instead of demurring, except such as show that there is no cause of action or such as are not cured by verdict." The defect in this declaration is that it fails to show a cause of action.

The judgment of the Superior Court must be reversed and the cause remanded.