Richard McMahon, Appellee, v. Louis F. Owsley, Receiver, Appellant.

## Gen. No. 16,452.

1. MASTER AND SERVANT—*no duty on a street car company to maintain street lights at switches or curves.* There is no obligation on a street car company to keep street lights at the switches or curves and no negligence in failing to do so.

2. CONTRIBUTORY NEGLIGENCE—*questions for jury.* The question of whether plaintiff, a street car conductor, was guilty of contributory negligence in being on the front platform is for the jury.

3. CONTRIBUTORY NEGLIGENCE—*street car conductor on front platform.* A street car conductor is not guilty of contributory negligence in being on the front platform when there to turn in his trip sheet and money at the request of the night foreman acting as motorman.

4. MASTER AND SERVANT—*where negligence of vice principal and fellow-servant is concurrent.* Where a night foreman acting as motorman is guilty of negligence as a fellow-servant in approaching a curve at improper speed, concurrent with his negligence as a vice principal in requesting the conductor to come to the front platform to turn in his trip sheet, and such combined negligence is the proximate cause of injury to the conductor, a recovery against the company is properly allowed.

5. LIMITATIONS—*amended declaration.* In an action by a street car conductor for personal injuries, where the declaration is amended more than two years after the accident, to the effect that the motorman was not a fellow-servant of the plaintiff, a new cause of action is not stated and plaintiff's demurrer to plea of the statute of limitations is properly sustained.

6. PLEADING—*declaration to be construed liberally after verdict.* A declaration alleging that plaintiff was injured while engaged in the exercise of his duties as conductor, that the car was being operated under the management of the defendant, that the defendant improperly ran and directed said car by its servant and that by the improper conduct of the defendant by its servant the plaintiff was thrown out and injured, will be construed as sufficient to sustain a verdict based on the negligence of the motorman acting in the double capacity of vice principal and servant.

Appeal from the Superior Court of Cook county; the HON. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed December 30, 1912.

WALTER W. ROSS, for appellant.

H. J. TONER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of $6,250 by the Superior Court of Cook County rendered on the verdict of a jury in a personal injury case.

The plaintiff, Richard McMahon, was a conductor on an electric interurban railroad owned by the Suburban Railroad Company but operated at the time of the accident and for a considerable time before by the defendant Owsley as receiver.

On the night of September 1, 1907, McMahon was the conductor of a car which ran in from LaGrange

to the Chicago terminus at the corner of Forty-eighth Avenue and Harrison Street. The route of the car between these two points took it by the car barns of the road. They were at the corner of Harlem Avenue and Twenty-second Street. At that point the car stopped and the motorman on it left it and went home. It was about midnight. To take his place a young man named Johnson twenty-one years old boarded the car and announced his intention of running it during the rest of the trip, which was to be from the barns to the corner of Forty-eighth Avenue and Harrison Street, and back by the barns, as the testimony would seem to indicate, to LaGrange. In any event the car was to go to the corner of Forty-eighth Avenue and Harrison Street, four miles distant, and at least back to the barns.

The plaintiff testified in this case that he remonstrated with Johnson for attempting to run the car, telling him that he was no motorman and unable to do so. Johnson swore, however, that there was no such conversation.

Johnson was the barn boss or night foreman, and as he himself testified in complete charge of everything at the barns after the superintendent left in the early evening. He also had orders from the superintendent on the particular night in question to relieve the motorman on this car at some time in the evening. Johnson had, without previous experience, obtained employment with the Car Company on his coming to this country four years or so before and had continued in the employment as car repairer and boss of other car repairers and cleaners up to the time of the accident. But he had other functions. It was customary for the night conductors to hand to him the money and trip checks which they had to turn in on night runs. The plaintiff testifies that he had orders so to do, and Johnson himself testified that there was nobody but him in authority at the barn after the superintendent left, that he was "in charge of everything."

It seems plain from the evidence that Johnson had a certain authority concerning the disposition of the men on the night cars, as to when and where they should be relieved and how and when they should turn in the trip sheets and money. It also seems that especial authority was given him to take charge of the particular car in question on this night, and that this would include authority to send the motorman home and to arrange for the plaintiff's relief at an earlier hour than it would otherwise be possible for him to quit. In orders given in pursuance of this authority he would be a vice principal representing the company, while as a motorman running the car he would be a fellow-servant of the conductor.

The competency of Johnson to run a car as a motorman, or, in other words, the sufficiency of his experience to justify his employment by the company to run a car as a motorman, was a matter in dispute in this case.

Johnson himself testified that during the four years that he worked as car repairer at the barns he had frequently taken out cars over the road as a motorman, but that although as a rule motormen employed by the company were sent out as students for several days, he had never served any time as a student on the road. He explained his taking cars out on the road by saying that when the "extra" men wanted to be relieved early, he would run cars out on short trips, taking them home and bringing the car back again.

The superintendent of the road testified that Johnson's business was general repair work and handling cars in the yard and on the road when it was necessary; that he had experience in running cars in the yard and on the road from the time he went into the service of the company.

Roder, a witness for the plaintiff, testified that he was in the employment of the Suburban Railroad as motorman for about a year before the second of September, 1907; that Johnson was night boss, telling the

motormen where to put the cars, inspecting the cars and things like that, and that he never knew him to run cars on the road and thinks he should have known it had it happened. He further testified that he, Roder, had to work six or seven days as a student under instruction as to day and night runs separately. On cross-examination he said it was the custom of Johnson, when the car was brought into the barns, to inspect them and shunt and run them inside the barn as far as was necessary.

Thompson, another witness who had been for several years in the employ of the road as a conductor and who was called for the plaintiff, testified that Johnson would frequently take out a car and run it for several miles so as to relieve men living at the west end of the line, and allow them to get home on the last car leaving the eastern terminus. The plaintiff swore that during the four months that he had been working for the defendant prior to September 2, he had never heard or known of Johnson "as a motorman out upon the road."

There were two routes which the car could take between the barns at the corner of Harlem Avenue and Twenty-second Street and the terminus at the corner of Forty-eighth Avenue and Harrison Street. It could go north on Harlem Avenue and turn east on Harrison Street and run to Forty-eighth Avenue, or it could go east on Twenty-second Street, turn north on Fifty-second Avenue to Harrison Street and then turn east. The first was the route taken on the trip east from the barns, but on the return the car turned south on Fifty-second Avenue. At the curve or switch at the corner of Fifty-second Avenue and Twenty-second Street the accident occurred which is the basis of this suit.

The plaintiff testifies that all passengers in the car got off at Harrison and Forty-eighth Streets and that he and Johnson "straightened out the car, put up the trolley," and were ready to go back, there being no passengers on the return trip, when Johnson came to

him and said, "We are going down Fifty-second Street this trip." Plaintiff says that he asked, "Why not go Harrison Street?" and that Johnson insisted on the route he had mentioned. Johnson denied this conversation. The plaintiff testified that the road was rough on Fifty-second Avenue between Sixteenth Street and Twenty-second Street, but there is no evidence of its being peculiarly or more greatly so than it may have been on the other route. The evidence indicates that it was expected that McMahon would leave the car at the corner of Austin Avenue and Twenty-second Street, a point a mile and a half east of Harlem Avenue and a mile and a half nearer his home than the car barns.

The superintendent and Mr. Johnson, acting under the superintendent's previously given instructions, wished McMahon to get home as early as possible, especially because of the anticipation of an unusually hard day following, it being a holiday.

According to the plaintiff's testimony the car ran generally on this return trip at about twenty-five miles an hour. There were no passengers. The car ran west on Harrison Street, turned safely into Fifty-second Avenue and slowed down at Twelfth Street to see if there was a Twelfth Street car approaching. It then ran to Sixteenth Street and stopped. The plaintiff got off the car to see if the railroad crossing there was clear. He went ahead of the car and then signaled for it to come on. As it crossed the tracks he stepped on the front platform, where was the motorman Johnson. Johnson then asked him if he had his trip sheet made out and on being answered in the negative, said, as the plaintiff swore: "You go in and make it out right there—make out the trip sheet. Mr. Whitsell says he wants to put you on for a big day tomorrow, and I want you to make the statement out and come out again." The plaintiff then shut the door from the car into the front vestibule, went to the back of the car, took down the figures from the register

there, and thus having completed the trip sheet, which he had partly prepared before reaching Sixteenth Street, returned to the front end of the car, opened the door into the front vestibule, went out into it and stood at the right hand of that door, near the rear right hand corner of the vestibule. He says he asked Johnson whether he was ready for the money and trip sheet, and Johnson said yes. McMahon gave him two bills and the trip sheet, and leaning back against the car, put his hands into his pocket to get the additional sum in change which was required, when Johnson exclaimed, "Look out," and the car, going at the rate of twenty-five miles an hour, without slackening speed struck the switch curve at the corner of Twenty-second Street and Fifty-second Avenue and the plaintiff was thrown across the vestibule and out through the open door at the left hand side, landing on the track and receiving very severe and permanent injuries. He was with difficulty carried to the car by Johnson and brought to the car barns. It is not necessary to detail the injuries received. If the defendant was liable for the injury to the plaintiff, the damages were not excessive.

The statement of facts which we have made rests largely on the plaintiff's testimony and is inconsistent in some particulars with the testimony of Johnson. Thus the latter not only denies that the plaintiff remonstrated with him about running the car as a motorman, and denies that he assumed control of the car and insisted on running it on Fifty-second Avenue against the objection of the plaintiff, but he also denies that he had any conversation with the plaintiff about taking the money and the trip sheet after leaving Sixteenth Street. He admits, however, that he had such a conversation half a mile north of Sixteenth Street, before McMahon got off the car. The witnesses differ as to other matters. Johnson says that he did slack up the car at Twenty-second Street, shutting off the power before he reached it, and that McMahon

poked him in the ribs just then and offered him money and thus led him to take his hand off the brake. The defendant claims that this was the cause of the accident.

Johnson admits, however, that the car was going about twenty miles an hour when it struck the curve; that it was a very heavy steel car, and that he did not know he was so close to the switch. The plaintiff says that he did not touch Johnson before or on speaking to him and asking him if he was ready to take the money.

There was a light in the front vestibule which belonged to a cluster of lights in the front end of the car, which were turned off and on by a single key. There was a tin socket to put over the vestibule light when the light in the cluster was turned on, the object of the tin covering being to prevent the light in the vestibule making a reflection in the front window and rendering it difficult for the motorman to see ahead.

The plaintiff McMahon said that as he stood feeling in his pockets for money at the time he was thrown, the light was on but with the tin shade over it, and that he could not say who placed the shade in position. "The motorman," he said, "generally fixed it to suit himself."

Johnson, on the other hand, swore that the tin was over the light when he got the car from the motorman at the barns, but that at Forty-eighth Avenue he changed ends and took the tin off the vestibule light and laid it in the car and that it was never on the front vestibule light on the way back. He says that when McMahon boarded the car on the front platform at Sixteenth Street the lamps in the forward cluster were not lighted, but that shortly after McMahon turned the light on in them and stood there counting his money, and that he, Johnson, couldn't see very well up the track in consequence, notwithstanding the headlight on the front of the car.

It was proven that the vestibule lamp could not have

been lighted without the other lamps in the forward cluster being lighted also, and there is some confusion in McMahon's testimony as to whether those other lamps were or were not burning.

The suit was originally brought against the Suburban Railroad and the original declaration filed in the cause December 27, 1907, alleged that the defendant allowed the car to be operated by an incompetent man, who was not in the habit of exercising the duties of a motorman, and that in consequence, through the incompetent and careless operation of the car by said incompetent servant of the defendant, the accident occurred and therefore the defendant was liable.

An amended declaration was filed April 30, 1908, which contained four counts, the first, second and fourth practically alleging the same matter as the single count of the original declaration. The third count alleged that it was the duty of the defendant to establish and maintain a light or signal of warning at the intersection of Fifty-second Avenue and Twenty-second Street, and that the defendant had for some time previous to the accident so established and maintained a light there, but that said light on the date of the accident had been negligently removed, and the point of danger allowed to remain unlighted, and that in consequence the defendant was liable.

On January 15, 1909, by leave of court, all the papers in the cause, including the declaration, were amended so as to substitute Owsley, receiver, as defendant, and on January 17, 1909, further amendments of the declaration were allowed, which inserted statements therein that the plaintiff at the time of the accident was in the exercise of due care for his own safety and that Johnson, who was acting as motorman at the time of the accident, was not then a fellow-servant of the plaintiff.

The plea of the general issue filed to the original and amended declarations was allowed to stand to the declaration as finally amended, and a further plea of

the statute of limitations was filed, alleging that the supposed causes of action "set forth in the amendments in the said declaration as amended January 17, 1910," did not accrue within two years.

To this plea the plaintiff demurred *ore tenus* and the demurrer was sustained. The cause was submitted to a jury, who found a verdict for the plaintiff for $6,250, and judgment was rendered on the verdict after a motion for a new trial and a motion in arrest of judgment had been overruled. After the plaintiff's evidence and at the close of all the evidence, motions for a peremptory instruction for the defendant were denied.

The plaintiff's contentions in the court below, were, first, that the defendant was negligent in furnishing an inexperienced and incompetent motorman; second, that this incompetent motorman negligently ran the car at a high rate of speed into the curve at Twenty-second Street; third, that the proximate cause of the accident was the negligent management of the car by Johnson concurrently with his direction or order to McMahon at that time to come out into the front vestibule and give him the money and trip sheet.

The negligent and incompetent management of the car at this point by the motorman, if a fellow-servant, it is argued, would not have injured the plaintiff had he not, under the direction of a "boss," a vice principal therefore, been at the place of danger.

The fourth contention of the plaintiff was that the defendant was guilty of negligence in failing to maintain a light on the street crossing at the place of the accident.

The contentions of the defendant were:

First: That there was no obligation on the defendant to keep the street lights at the switches or curves, and no negligence, therefore, in failing to do so. With this position we agree, and the matter of street lights is eliminated, therefore, from our consideration of the case.

Second: That Johnson, who acted as motorman on the night in question, was an experienced man and that in committing the car to his operation, the defendant was guilty of no negligence.

The majority of the court hold that there was no evidence on which the jury could be justified in holding that the defendant had reason to believe Johnson incompetent, and therefore that the verdict and judgment cannot be upheld on the ground that the defendant was responsible to the plaintiff because of the improper employment of an incompetent motorman on the car in question.

Third: That the plaintiff, under the evidence, should be held guilty of contributory negligence as a matter of law.

The position is based on the view that the plaintiff's duty as a conductor was to be on the rear platform of the car as it reached the curve; that he voluntarily and deliberately went to the front platform, knowing that the left hand door of the vestibule was open, and stood counting the money he had received from passengers on the preceding trip; that he turned on the light when he knew that his doing so would interfere with the view of the motorman; that as the car was about to pass the curve at Twenty-second Street, he founded or otherwise attracted the attention of the motorman and thus withdrew him from his duties and the control of his power or brake.

With this contention we are unable to agree. We think that the jury in the conflict of evidence was at liberty to find that Johnson had been placed in a position of authority over the plaintiff on the night in question, and was exercising that authority; that it was the purpose and desire of the defendant that in view of the work anticipated on the following day, the plaintiff should be sent home from the nearest available point on the route in this trip; that his trip sheet and money returns were expected by Johnson before he should leave the car and were demanded by John-

son after and not before he left Sixteenth Street; that he was specifically ordered by Johnson to go inside the car and make out the statement and bring it out; that the vestibule light was already lighted and had a shade over it and was not turned on by him.

Between the two versions of what took place there is a marked difference, and the jury we think were at liberty to choose. We should not feel justified in interfering with their conclusion if it inhered in their verdict that the one rather than the other was accepted by them.

If the version we have last given be the correct one, the plaintiff was not guilty of contributory negligence occasioning the accident, but was in the line of his duty, notwithstanding his presence on the front instead of the rear platform, where a conductor usually stands and where he would have been safe. The jury were in several instructions properly advised as to the law in relation to contributory negligence and as to the necessity of the plaintiff's exercise of due care, and we think the questions involved in the case concerning the plaintiff's contributory negligence and want of due care, as alleged by the defendant, were properly left to them.

The fourth contention of the defendant was that even assuming the accident to have been proximately caused by the negligence of Johnson in driving the car at a great and improper speed onto the curve, yet as Johnson and McMahon were fellow-servants, McMahon cannot recover from the defendant.

On this ground the defendant says the cause should have been taken from the jury by the court below. In this court he insists that we should reverse the judgment without remanding the cause.

We think that it is on our view of this contention that our disposition of the cause must turn.

There seems to us no room for doubt or argument that Johnson, as motorman, was negligent in driving the car. If he were not a man experienced

enough and with knowledge enough of the road to have been entrusted with this car at night on the route taken, the defendant would be liable for entrusting it to him. If he were so experienced, he knew the distance from Sixteenth Street to the curve and the time necessary to run over it; he knew that the conductor standing on the front platform and busy with his money and statement would be likely to be injured by the driving of the car into that curve at the rate of twenty or twenty-five miles an hour, and he was negligent in not knowing, to use his own language, that he "was so close to the curve."

But it is equally undeniable, under the decisions of this state, that if this negligence of Johnson in driving the car as motorman stood by itself in isolation as the only cause proximately causing the accident to McMahon, and McMahon had no other relation to Johnson at the time and place in question than that which normally and usually exists between a conductor and a motorman on the same car, then they were fellow-servants in such a sense that McMahon could not recover from the defendant for the effects of this negligence.

A nice question is presented, however, concerning concurrent negligence in this case. The proximate cause of the injury to McMahon, it appears to us, was his presence unbraced on the front platform of the car, where the left-hand door was always open, combined with the negligent driving of the car by Johnson at full speed into a switch curve. With either of these factors in the situation absent, the accident would not have happened. As a conductor's usual and proper place, as the evidence shows, was on the rear platform, it is argued with force by the appellant that his presence at that time in that place, if voluntary, was his own negligence, directly and materially contributing to the injury. If, on the other hand, the jury were at liberty to find and, to support their verdict, must be presumed to have found, that his presence at that time and place was involuntary and under the direc-

tions and orders of a vice principal, who had authority to give them, was not the vice principal in ordering the plaintiff into that place at that time guilty as vice principal of negligence concurrent with his negligence as fellow-servant in driving the car? And did not that negligence as vice principal contribute as materially and proximately to the injury as the negligence of the plaintiff could be said to have done if his presence had been voluntary?

And can the defendant escape the consequences of the concurrent negligence of the vice principal because the other necessary factor in the accident was the negligence of the same person in his capacity of fellow-servant?

It might perhaps be argued that directing the presence of the plaintiff on the front platform as the car was approaching a curve was not negligence, for if the car had been going slowly his position would not have been dangerous; but does it lie in the mouth of the vice principal (for whose action the defendant must answer) to say that he did not know that the car would approach the curve at an improper speed, when as "fellow-servant" he was himself responsible for that speed?

Must not the vice principal, as vice principal, be held to have known that as fellow-servant he was so managing the car that the order or instruction as vice-principal would bring about a dangerous situation for the plaintiff?

These questions are not free from difficulty, but we think their answer must be in favor of the plaintiff's view.

The negligence of Johnson as vice principal seems to us concurrent with that of Johnson as fellow-servant in causing the injury, and the result as to the liability of the defendant is the same as though the vice principal and servant had been different persons.

In such a case of concurrent negligence, as the opinion in Wabash, St. L. & P. R. Co. v. Shacklet, 105 Ill.

381, says, it is "a long and well-established principle" that each of the wrongdoers is severally liable, and the plaintiff has his election to sue all jointly or bring his separate action against any one.

And the reasoning of the opinion in Pullman Palace-Car Co. v. Laack, 143 Ill. 242, leading to the propositions that where the negligence of two persons results in an injury to a third, which the negligence of neither was sufficient in itself to produce, the negligence of both is to be held in combination as the proximate cause of the injury; and that in that case "the negligence of the master and that of the fellow-servant were concurrent causes and combined were the proximate cause of the injury, and that the servant might recover" although the injury was the combined effect of the negligence of the master and of the fellow-servant (pp. 261-262), seems to us logically as fairly in point in the case at bar as it would be were the "vice principal" and the "fellow-servant" not identical.

While many of the assignments of error are disposed of by our view of the conclusions that the jury were at liberty to draw from the evidence and by our opinion as to the application of the law thereto, before indicated, other questions in the case arise on the pleadings. One assignment of error is that the court erred in sustaining the plaintiff's demurrer to defendant's plea of the statute of limitations. As heretofore pointed out, the amendment to the declaration, made more than two years after the accident, to the effect that Johnson was not a fellow-servant of the plaintiff, was the only occasion of the plea. If this amendment did not make the declaration state a different cause of action from that before set forth, the demurrer was properly sustained. We do not think that a new cause of action was thereby stated. We reaffirm the decision of this court on this point in Mott v. Chicago & M. El. R. Co., 102 Ill. App. 412.

There is another question, however, arising on the pleadings, which cannot be said to be free from doubt.

If ·a construction at all narrow or technical is to be put on the declaration, it is difficult to determine exactly wherein the combined negligence on which the verdict and judgment in favor of the plaintiff can, according to our view, alone be based, is charged. But we are not disposed, in view of the very liberal rules laid down by our supreme court as to intendments and presumptions in favor of a declaration after verdict, to give to the one in the case at bar such a narrow or technical construction. See, for example, Chicago, B. & Q. R. Co. v. Harwood, 90 Ill. 426; Keegan v. Kinnare, 123 Ill. 280; Chicago & A. R. Co v. Clausen, 173 Ill. 100, and Sargent Co. v. Baublis, 215 Ill. 428. The declaration alleged that the plaintiff was injured while engaged in the exercise of his duties as conductor; that the car was being operated under the management of the defendant; that the defendant improperly ran and directed said car by its servant, and that by the improper conduct of the defendant by its servant the plaintiff was thrown out and injured, and we must hold that "these terms" were "sufficiently general to include, by fair and reasonable intendment, any matter necessary to be proved, and without proof of which the jury could not have given the verdict." This is made by the cases which we have cited the test of the sufficiency of the declaration after verdict to support the judgment.

The jury were properly instructed, and we do not think that in the refusal of those tendered instructions which were refused, or in the modifications of those modified, the court below erred. We agree with counsel for appellee that the legal principles involved in the refused instructions were covered by those given, and that the modifications in those modified were unimportant. They were proper enough in any event.

The court, we think, committed no error in ruling out the question as to Mr. Whitsell's opinion of Johnson's competency as a motorman. Even if the ruling

160    APPELLATE COURTS OF ILLINOIS.

Gross v. Saratoga European Hotel & R. Co., 176 Ill. App. 160.

had been erroneous, it would have been immaterial in the view we have taken of the issues and the evidence. The judgment of the superior court is affirmed.

*Affirmed.*